STATE OF NORTH CAROLINA v. ZANE BROWN HILL

No. 233A91

(Filed 25 June 1992)

1. **Constitutional Law § 372 (NCI4th)— death penalty—no prosecutorial discretion**

The death penalty statute, N.C.G.S. § 15A-2000, does not unconstitutionally give the district attorney the discretion to decide whether to seek the death penalty.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

2. **Criminal Law § 1334 (NCI4th)— death penalty—failure to list aggravating circumstances in indictment**

The State did not violate the guarantees of due process contained in the U.S. Constitution and in Art. I, § 23 of the N.C. Constitution by failing to list in the indictment the aggravating circumstances upon which it would rely during a capital sentencing proceeding.

**Am Jur 2d, Indictments and Informations §§ 7-10; Criminal Law §§ 825, 826, 830.**

3. **Jury § 7.14 (NCI3d)— doubts about death penalty—peremptory challenges**

It was not improper for the prosecutor in a capital case to use the State's peremptory challenges to remove potential jurors who expressed doubts about capital punishment.

**Am Jur 2d, Criminal Law § 685.**

**Comment Note—Beliefs regarding capital punishment as disqualifying juror in capital case—post-Witherspoon cases. 39 ALR3d 550.**

4. **Jury § 6.4 (NCI3d)— death penalty views—challenge for cause—rehabilitation by defendant not allowed**

The trial court in a capital case did not err in refusing to allow defendant to rehabilitate prospective jurors challenged for cause by the State because of their expressed inability

to comply with the law because of their death penalty views where there was no showing that further questioning by defendant would likely have produced different answers to the questions propounded to the challenged jurors.

**Am Jur 2d, Criminal Law § 685.**

**Comment Note—Beliefs regarding capital punishment as disqualifying juror in capital case—post-Witherspoon cases. 39 ALR3d 550.**

5. **Jury § 6.3 (NCI3d)— voir dire examination—attempt to stake out jurors—improper questions**

The trial court did not abuse its discretion in refusing to allow defendant to ask prospective jurors (1) what type of crimes they felt were deserving of the death penalty, (2) whether they understood that they might find defendant guilty of something other than first degree murder, (3) whether they believed that any type of premeditated murder was deserving of the death penalty, (4) whether they understood that all of them need not agree that a mitigating circumstance existed in order for individual jurors to consider it mitigating, and (5) whether they would "feel the need to hear from" defendant in order to find him not guilty, since each of these questions sought to "stake out" the jurors as to their answers to legal questions before the jurors had been informed in any manner of applicable legal principles by which they should be guided.

**Am Jur 2d, Jury § 203.**

**Propriety and effect of asking prospective jurors hypothetical questions, on voir dire, as to how they would decide issues of case. 99 ALR2d 7.**

6. **Criminal Law § 466 (NCI4th)— comments by prosecutor— defense counsel with Public Defender's Office—absence of prejudice**

Defendant was not prejudiced when the prosecutor in a capital case, during questioning of prospective jurors, mentioned that both defense counsel served with the Public Defender's Office and the jurors thus learned that tax dollars were paying for his defense where defendant failed to object to the prosecutor's statements at trial, and defendant himself

testified extensively about his impoverished status and his reliance on various programs for support.

**Am Jur 2d, Appeal and Error § 508.**

**Prosecutor's appeal in criminal case to self-interest or prejudice of jurors as taxpayers as ground for reversal, new trial, or mistrial. 60 ALR4th 1063.**

7. **Evidence and Witnesses § 344 (NCI4th)— felonious assault on wife—previous threat—relevancy to show intent**

In a prosecution of defendant for assaulting his wife with a deadly weapon with intent to kill, testimony by the victim that defendant broke into her house and threatened to kill her six weeks before the incident in question was relevant and admissible to show defendant's intent and ill will toward the victim. Furthermore, the trial court did not err by failing to exclude this testimony as being unfairly prejudicial under Rule of Evidence 404(b).

**Am Jur 2d, Assault and Battery § 51.**

8. **Criminal Law § 557 (NCI4th)— restraining order against defendant—testimony withdrawn and cautionary instruction given—mistrial denied**

The trial court did not err in denying defendant's motion for a mistrial in his trial for murdering his son and feloniously assaulting his wife after an officer briefly mentioned during her testimony the existence of a restraining order against defendant where the trial court cured any error by withdrawing the challenged evidence from the jury's consideration and issued a cautionary instruction. Furthermore, defendant mentioned the restraining order during his own testimony and thereby waived any error in this regard.

**Am Jur 2d, Appeal and Error § 807.**

9. **Evidence and Witnesses § 1694 (NCI4th)— photographs of victim's body—admissibility for illustrative purposes**

The trial court did not abuse its discretion in admitting for illustrative purposes five photographs taken of a murder victim's body at the crime scene where the photographs, which showed the victim tangled in a telephone cord with a pistol in his front pants pocket, illustrated the testimony of the crime

scene technician and tended to refute defendant's explanation of the killing.

**Am Jur 2d, Homicide § 417.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

10. **Homicide § 244 (NCI4th)— first degree murder—sufficient evidence of premeditation and deliberation**

The State's evidence was sufficient to establish the elements of premeditation and deliberation so as to support defendant's conviction of first degree murder where it tended to show that defendant left a garage near his wife's house when his wife arrived home from work; as he was leaving, defendant told some teenagers nearby that they were "going to see some blue lights now"; defendant then retrieved a .22 caliber rifle from a trailer on the property and went to his wife's house carrying the loaded gun; after entering the house, defendant pointed the rifle at his son; when defendant's son went to telephone for help, defendant followed him to another room and shot him three times; and defendant then fled.

**Am Jur 2d, Homicide § 439.**

11. **Evidence and Witnesses § 110 (NCI4th); Homicide § 100 (NCI4th)— habit of taking medication—inadmissibility to show diminished capacity**

Questions posed to a defendant on trial for first degree murder as to whether he was in the habit of taking medication were not admissible under Rule of Evidence 406 to establish his habit of abusing prescribed medication and thus the defense of diminished capacity since (1) only direct evidence of defendant's impairment at the time of the murder is relevant to the defense of diminished capacity; (2) mere evidence of intemperance ordinarily does not meet the "invariable regularity" standard required of evidence of habit; (3) the questions posed to defendant were either not in the proper form or were without proper foundation; and (4) the court did allow questions dealing with defendant's use of alcohol and Darvon on the day of the killing. Furthermore, defendant was not prejudiced because ample evidence of defendant's long-term alcohol and drug abuse was already before the jury.

STATE v. HILL

[331 N.C. 387 (1992)]

Am Jur 2d, Homicide § 115.

Comment Note—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.

12. **Evidence and Witnesses § 110 (NCI4th)— use of alcohol and drugs—habit—insufficient foundation**

A defendant on trial for first degree murder failed to lay a proper foundation to establish a witness's testimony about defendant's use of alcohol and drugs as evidence of habit where the witness stated that she had no knowledge of defendant's drug use until she began living with him only a few months before the killing and had no knowledge of defendant's use of alcohol and drugs on the day of the killing.

Am Jur 2d, Evidence § 244.

13. **Evidence and Witnesses § 2793 (NCI4th)— expert witness—exclusion of speculative testimony—absence of offer of proof**

The trial court did not err when it excluded a psychiatrist's response to a question about the effect of medication on defendant's brain damage where the witness began his response by stating, "Well, we don't know, but the . . . ," since the trial court merely cut off a speculative response by the witness. Furthermore, the exclusion of this evidence was not preserved for appellate review where defendant made no offer of proof of the excluded testimony.

Am Jur 2d, Expert and Opinion Evidence § 200.

14. **Evidence and Witnesses § 752 (NCI4th)— admission of evidence—introduction of similar evidence—waiver of error**

In a prosecution of defendant for murder of his son and assault on his wife, defendant waived any error in the State's cross-examination of him about an adulterous relationship when he previously introduced evidence of this adulterous relationship.

Am Jur 2d, Witnesses § 811.

15. **Evidence and Witnesses § 967 (NCI4th)— discharge summary—insufficient foundation—exclusion harmless error**

Defendant failed to lay a proper foundation for the admission of defendant's discharge summary from a psychiatric hospital where a psychiatrist testified that he reviewed the summary in forming his opinion, but he never stated affirma-

STATE v. HILL

[331 N.C. 387 (1992)]

tively that the summary contained facts upon which he based his opinion regarding defendant's state of mind. Assuming *arguendo* that the discharge summary was admissible under Rule of Evidence 803(6), defendant was not prejudiced by its exclusion since the psychiatrist testified to the same facts as those contained in the summary.

**Am Jur 2d, Expert and Opinion Evidence § 186.**

**Admissibility on issue of sanity of expert opinion based partly on medical, psychological, or hospital reports. 55 ALR3d 551.**

**Admissibility of testimony of expert, as to basis of his opinion, to matters otherwise excludable as hearsay — state cases. 89 ALR4th 456.**

**16. Criminal Law § 900 (NCI4th) — verdict form — order of issues**

The trial court did not err in failing to rearrange the verdict form by placing the blank for "Not Guilty" at the top, followed by the blanks for the lesser included offenses, and then by the blank for first degree murder.

**Am Jur 2d, Trial § 1825.**

**17. Criminal Law § 734 (NCI4th) — instructions — use of "victim" — no expression of opinion**

The trial court in a first degree murder trial did not intimate that defendant was guilty by using the word "victim" rather than the term "deceased" in the jury charge.

**Am Jur 2d, Trial § 1204.**

**18. Evidence and Witnesses § 1064 (NCI4th) — flight — order of instructions**

The trial court did not err in giving its instructions on flight immediately after giving its instructions on first degree murder.

**Am Jur 2d, Trial § 1146.**

**19. Evidence and Witnesses § 752 (NCI4th) — question about "adulterous" relationship — other similar evidence — absence of prejudice**

Assuming error *arguendo* in the State's question to a psychiatrist during a capital sentencing proceeding as to whether

defendant had left his wife and entered into an "adulterous" relationship with another woman, defendant was not prejudiced where defendant himself testified about his adulterous relationship with the other woman and the woman testified about her relationship with defendant.

**Am Jur 2d, Appeal and Error § 776.**

20. **Criminal Law § 1310 (NCI4th)— capital sentencing proceeding—exclusion of evidence—offer of proof**

The propriety of the trial court's exclusion of purported mitigating testimony by two witnesses in a capital sentencing proceeding was not before the appellate court where defendant made no offer of proof of the responses of the witnesses.

**Am Jur 2d, Appeal and Error § 604.**

21. **Criminal Law § 1314 (NCI4th)— capital sentencing proceeding—witness's feelings if defendant executed—exclusion proper**

The trial court properly refused to permit the son of defendant's girlfriend to answer a question during a capital sentencing proceeding as to how he would feel if the jury voted to kill defendant since this was not a proper matter for consideration in sentencing defendant as it did not involve any aspect of defendant's character or record or any of the circumstances of the offense.

**Am Jur 2d, Homicide § 554; Criminal Law §§ 598, 599.**

22. **Criminal Law § 1309 (NCI4th)— capital sentencing proceeding—irrelevant evidence**

In a capital sentencing proceeding wherein a witness testified that defendant and a friend had been bitten by a rabid dog when they were children and that defendant began to drink after receiving the painful rabies treatment, the trial court properly refused to allow the witness to testify that defendant's friend who had been bitten by the rabid dog committed suicide fifteen years later since defendant established no linkage between the rabies treatment, the suicide, and defendant.

**Am Jur 2d, Homicide § 554; Criminal Law §§ 598, 599.**

**23. Criminal Law § 1362 (NCI4th)— capital sentencing proceeding—mitigating circumstance—age of defendant**

The trial court did not err in refusing to submit the statutory mitigating circumstance of defendant's age for the jury's consideration in a capital sentencing proceeding where defendant's chronological age was fifty-four, defendant argues that his physiological age was seventy-five to eighty, but defendant presented no evidence of advanced physiological age.

**Am Jur 2d, Homicide § 554; Criminal Law §§ 598, 599.**

**24. Criminal Law § 1363 (NCI4th)— capital sentencing proceeding—residual doubt as to defendant's guilt—improper mitigating circumstance**

Lingering or residual doubt as to defendant's guilt is not a proper nonstatutory mitigating circumstance for submission to the jury in a capital sentencing proceeding.

**Am Jur 2d, Homicide § 554; Criminal Law §§ 598, 599.**

**25. Criminal Law § 1363 (NCI4th)— capital sentencing proceeding—mitigating circumstance—trauma from friend's suicide—insufficient evidence**

The trial court did not err in refusing to submit to the jury in a capital sentencing proceeding the nonstatutory mitigating circumstance that defendant suffered trauma as a child due to the suicide of a close friend where defendant presented no evidence that the death of his friend caused him any trauma.

**Am Jur 2d, Homicide § 554; Criminal Law §§ 598, 599.**

**26. Criminal Law § 1349 (NCI4th)— nonstatutory mitigating circumstance—written request**

The failure of the trial court to submit a nonstatutory mitigating circumstance to the jury in a capital sentencing proceeding is not error absent a timely written request for the submission of the circumstance.

**Am Jur 2d, Homicide §§ 554, 559, 560; Criminal Law §§ 598, 599.**

27. **Criminal Law §§ 1324, 1363 (NCI4th)— capital sentencing proceeding—nonstatutory mitigating circumstance—failure to submit and list—harmless error**

The trial court in a capital sentencing proceeding erred in failing to submit the nonstatutory mitigating circumstance as to whether defendant was a positive influence on a behaviorally-emotionally handicapped child and in failing to include such nonstatutory mitigating circumstance in writing on the form to be given the jury where defendant made a written request for submission of this circumstance and presented sufficient evidence during the sentencing hearing to support submission of this circumstance. However, this error was harmless beyond a reasonable doubt where (1) the jury was allowed to consider and must have given full consideration to all evidence of defendant's positive influence on the child in question when it considered the good character and catch-all mitigating circumstances, and (2) the evidence supporting this particular nonstatutory mitigating circumstance was of little import given the overwhelming evidence supporting defendant's conviction and the aggravating circumstances found by the jury.

**Am Jur 2d, Homicide §§ 559, 560.**

28. **Criminal Law § 458 (NCI4th)— capital sentencing proceeding— jury argument—no reference to possibility of parole**

The prosecutor's closing argument in a capital sentencing proceeding asking the jury whether it could guarantee that defendant would not get a .22 automatic sometime in the future and kill again if it chose not to exercise the option of the death penalty was not an improper reference to the possibility of parole since the prosecutor never mentioned the term "parole" and never argued the consequences of a life sentence.

**Am Jur 2d, Homicide §§ 464, 555.**

**Prejudicial effect of statement of prosecutor as to possibility of pardon or parole. 16 ALR3d 1137.**

29. **Criminal Law § 1323 (NCI4th)— capital sentencing proceeding—mitigating circumstances—instructions**

The trial court in a capital sentencing proceeding did not err in instructing the jury that it must first find whether

each nonstatutory mitigating circumstance existed and then whether that circumstance had mitigating value.

**Am Jur 2d, Homicide §§ 483, 561.**

30. **Criminal Law § 1347 (NCI4th) — capital sentencing proceeding — course of conduct aggravating circumstance — instructions — limiting consideration of other crimes**

The trial court's instruction on the course of conduct aggravating circumstance for the first degree murder of defendant's son properly limited the jury's consideration to the conduct involved in defendant's attempt to kill his wife on the same date and did not allow the jury to consider events prior to the date of the murder where the court directed the jury that it was to consider other crimes of violence occurring "on or about" the day defendant killed his son, and the court used the terms "crime" and "person" in their singular forms in the challenged instruction.

**Am Jur 2d, Homicide §§ 483, 561.**

31. **Criminal Law § 1357 (NCI4th) — mental or emotional disturbance mitigating circumstance — instructions — evidence considered**

The trial court's instructions on the mental or emotional disturbance mitigating circumstance for the first degree murder of defendant's son did not prevent the jury from considering the testimony of a psychiatrist concerning defendant's jealousy and fear of separation from his wife as evidence supporting this circumstance where the instructions clearly directed the jury that, in order to find this mitigating circumstance, "it is enough that the defendant's mind or emotions were disturbed, from any cause."

**Am Jur 2d, Homicide §§ 483, 561.**

32. **Criminal Law § 1361 (NCI4th) — impaired capacity mitigating circumstance — drug and alcohol use — sufficiency of instructions**

Although the trial court did not specifically instruct the jury that it could consider evidence of defendant's drug and alcohol use on the day of the killing when determining whether defendant's capacity to appreciate the criminality of his conduct or conform his conduct to the law was impaired, the trial court's instructions on the impaired capacity mitigating

STATE v. HILL

[331 N.C. 387 (1992)]

circumstance were not improper where they did not preclude the jury from considering and weighing that evidence for this purpose.

**Am Jur 2d, Homicide §§ 483, 561.**

33. **Criminal Law § 1348 (NCI4th)— definition of mitigating circumstance—failure to give requested instruction**

The trial court did not err by failing to give defendant's tendered instruction generally defining the term "mitigating circumstance" where the court gave the jury a correct general definition of "mitigating circumstance" drawn directly from the pattern jury instructions.

**Am Jur 2d, Homicide §§ 483, 561.**

34. **Criminal Law § 1348 (NCI4th)— capital case—instructions on mitigating circumstances—avoidance of use of "sympathy"**

Trial courts should avoid mentioning "sympathy" in instructions concerning mitigating circumstances in capital sentencing proceedings, as there will always be some danger that some jurors will misconstrue any suggestion that they may consider sympathy during sentencing as giving them the type of unbridled discretion as to sentencing which violates the Eighth Amendment. Instead, when instructing the jury to consider the statutory catch-all mitigating circumstance of "[a]ny other circumstance arising from the evidence which the jury deems to have mitigating value," trial courts should emphasize that the jury must weigh all mitigating considerations whatsoever which it finds supported by evidence. N.C.G.S. § 15A-2000(f)(9).

**Am Jur 2d, Homicide §§ 483, 561.**

35. **Jury § 6.4 (NCI3d)— voir dire—death penalty views—no Morgan error**

Defendant's rights under the Fourteenth Amendment as set forth in *Morgan v. Illinois*, --- U.S. --- (1992), were not violated where defendant was permitted to seek information on the views of prospective jurors as to whether they would automatically sentence defendant to death regardless of the facts of the case and defendant received answers on this matter.

**Am Jur 2d, Homicide § 466.**

STATE v. HILL

[331 N.C. 387 (1992)]

Comment Note — Beliefs regarding capital punishment as disqualifying juror in capital case — post-Witherspoon cases. 39 ALR3d 550.

36. Criminal Law § 1373 (NCI4th) — death penalty — not excessive or disproportionate

The sentence of death imposed on defendant for the first degree murder of his son was not excessive or disproportionate to the penalty imposed in similar cases considering the crime and defendant where the evidence showed that defendant deliberately entered the house of his estranged wife and threatened his wife and his son with a rifle; defendant then deliberately shot his son three times when his son attempted to telephone law enforcement authorities for help; defendant then struck his wife with the butt of his rifle when she came to her mortally wounded son; if defendant had not had to reload the rifle, giving his wife time to escape, defendant would likely also have shot and killed her at that time; and having failed to do so, defendant pursued her and attempted to shoot her as she was running away from the house.

Am Jur 2d, Homicide §§ 549, 552.

Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judgment and sentence of death upon the defendant's conviction of first-degree murder, entered by *Allen (C. Walter), J.*, in the Superior Court, BUNCOMBE County, on 2 October 1990. The defendant's motion to bypass the Court of Appeals on his appeal of an additional judgment for assault with a deadly weapon with intent to kill was allowed by the Supreme Court on 10 June 1991 and that appeal was consolidated with the defendant's appeal of the murder conviction. Heard in the Supreme Court on 12 February 1992.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

*William D. Auman and Robert W. Clark, Assistant Public Defenders, Twenty-Eighth Judicial District, for the defendant-appellant.*

MITCHELL, Justice.

The State's evidence tended to show the following. In October 1989 the defendant Zane Brown Hill abandoned his wife Bonnie Hill. Early on the morning of 29 November 1989, the defendant broke a bedroom window and entered his estranged wife's home. The defendant placed a pistol to his wife's throat and said he had come to kill her. He then ordered his wife to bed. The defendant soon passed out, and Mrs. Hill left the house.

On 10 January 1990 Mrs. Hill left for work at 6:20 a.m. The defendant telephoned her at work several times that day to discuss the possibility of their reconciliation. Mrs. Hill arrived home at approximately 5:30 p.m. and noticed the defendant's van behind a trailer located on her property. Mrs. Hill went into the house and spoke with her son Randall and the defendant's mother who also lived with her. Mrs. Hill and Randall saw the defendant leave the nearby trailer and approach the house carrying a rifle. Randall then got a pistol from within the house.

The defendant entered the house and pointed his rifle at his son Randall. The defendant had alcohol on his breath. Randall asked his father to put the rifle down. The defendant's mother also attempted to calm the defendant. During the commotion, Randall went to a bedroom to call the police. The defendant ran after Randall. Mrs. Hill heard one shot fired, and then Randall moaned. A second shot was fired, and Randall moaned again. A third and final shot was then fired.

Mrs. Hill ran into the bedroom and saw her son lying on the floor with the telephone receiver in his hand. She attempted to help her son, but the defendant struck her with the butt of the rifle knocking her to the floor. As the defendant was attempting to reload the rifle, Mrs. Hill ran out of the house. As she ran across her yard, she heard gunshots. Glancing over her shoulder, she saw the defendant standing on her porch holding the rifle. She ran to a neighbor's house and asked the neighbor to call the police. The defendant did not pursue her.

Jason Scott Smith, a neighbor of Mrs. Hill's, testified that on 10 January 1990 he saw the defendant at a garage near the Hill residence. When Mrs. Hill arrived at home that afternoon, the defendant told Smith, "You're going to see some blue lights now." A few minutes later Smith saw Mrs. Hill run out of the

house. The defendant came out to the porch and shot toward her, but he missed.

Jeremy Banks also saw the defendant at the garage near the Hill residence on 10 January 1990. Banks saw Mrs. Hill arrive home from work. The defendant then went into the house with a gun. Five minutes later, Mrs. Hill ran out of the house, and the defendant shot at her from the porch.

Sheriff's deputies apprehended the defendant later that day. They found the defendant lying in the front seat of a truck with a rifle underneath him. The deputies seized the rifle.

At the crime scene, the deputies found Randall's body on the floor of a bedroom. The telephone cord was wrapped around his arm, and the receiver was on the floor.

An autopsy of Randall Hill's body revealed three gunshot wounds: (1) one in the upper abdomen; (2) one in the upper middle back; and (3) one in the left upper side of the back. One bullet had passed through the aorta producing massive bleeding inside Randall's chest. Randall Hill died from the combination of gunshot wounds to his chest and abdomen.

The deputies collected .22 caliber spent shell casings from inside Mrs. Hill's house and from her front porch. A .22 caliber bullet was recovered from Randall Hill's body. Ballistics tests showed that the spent shells had been fired from the rifle seized from the defendant. The deputies also retrieved a fully loaded .38 caliber pistol from Randall's right front pants pocket.

The defendant introduced evidence tending to show the following. The defendant had a long history of alcohol and drug abuse. On 10 January 1990 the defendant began drinking at 9 a.m. and consumed twelve beers during the course of the day. The defendant also took four Darvons, a pain reliever, and two Flexorils, a muscle relaxant.

The defendant called his wife at her work on 10 January 1990 to discuss a possible reconciliation. He testified that he went to the trailer near the Hill residence because his wife asked him to do so. When Mrs. Hill arrived home at approximately 5:45 p.m., the defendant walked up to the house with a rifle intending to leave it in the house as he had always done. When the defendant entered the house, Randall threatened him with a pistol. Randall

STATE v. HILL

[331 N.C. 387 (1992)]

went to telephone the sheriff, and the defendant followed. While Randall was on the phone, Randall drew the pistol on the defendant a second time. The defendant testified, "I just figured he was going to maybe shoot me, and I pulled the trigger, I reckon. That's all I remember." The defendant testified that he never reloaded the rifle, never struck his wife with it, and never fired it at her.

The defendant testified that he left the house after shooting Randall. While walking through a field, he fell into a creek. He then borrowed clean clothes from a neighbor. Later, he got into a truck and fell asleep on the front seat. The sheriff's deputies woke him later and arrested him.

The defendant also testified about the November 1989 incident when he entered Mrs. Hill's residence. The defendant testified that he went to his estranged wife's house to retrieve some of his clothes. His wife had changed the locks to the house. He broke a window because he had no other way to enter the house.

At the time he killed Randall, the defendant was living with Teresa Taylor and her son Edward. Taylor testified that the defendant treated her son Edward like his own son. Taylor also testified that the defendant took Darvon and other prescription drugs for pain.

Dr. Richard Reed Felix, a psychiatric expert, conducted a psychiatric evaluation of the defendant. He testified that the defendant took prescription drugs for pain resulting from his arthritis. Dr. Felix testified that on 10 January 1990 the defendant suffered from a degree of brain damage, primarily to the frontal and limbeck areas which control the processing and sorting of information. The defendant's long-term alcohol abuse had contributed to his brain damage. In Dr. Felix's opinion, the drugs the defendant testified that he had consumed on the day of the killing, coupled with the eight to ten beers the defendant said he drank, would have aggravated his mental impairment and worsened his perception.

Mrs. Hill, the defendant's wife, testified for the State on rebuttal about an incident on 1 January 1990 when the defendant came to her residence with a pistol. The defendant and Mrs. Hill went for a drive on that day, and the defendant shot the pistol two times into the floorboard of the car. The defendant then rented a motel room, and the defendant and Mrs. Hill went to bed. Shortly afterwards, the defendant passed out. Mrs. Hill found the pistol the defendant had been carrying, took it with her, and went home.

STATE v. HILL

[331 N.C. 387 (1992)]

At some point during the incident, the defendant threatened to kill Mrs. Hill.

Other evidence introduced in the trial court is discussed at other points in this opinion, where pertinent to the issues raised by the defendant.

[1]    In his first assignment of error, the defendant contends that the death penalty as provided for by N.C.G.S. § 15A-2000 is unconstitutional because the district attorney has the discretion to decide whether to seek the death penalty. "[T]he question of trying a first degree murder case as capital or non-capital is not within the district attorney's discretion." *State v. Britt*, 320 N.C. 705, 709, 360 S.E.2d 660, 662 (1987). The defendant's argument is without merit.

[2]    The defendant also argues under this assignment that the State violated the guarantees of due process contained in the Constitution of the United States and Article I, Section 23, of the Constitution of North Carolina by not listing in the indictment the aggravating circumstances upon which it would rely during any sentencing proceeding under N.C.G.S. § 15A-2000. This Court rejected a similar argument in *State v. Williams*, 304 N.C. 394, 420-22, 284 S.E.2d 437, 453-54 (1981), *cert. denied*, 456 U.S. 932, 72 L. Ed. 2d 450 (1982). N.C.G.S. § 15A-2000(e) sets forth an exclusive list of the only eleven aggravating circumstances which may be considered by the jury. Therefore, the statute fully apprised the defendant of all of the aggravating circumstances that the State might rely upon in seeking the death penalty. *Id.* at 422, 284 S.E.2d at 454. No more was required. *Id.* This assignment of error is overruled.

[3]    In his next assignment of error, the defendant contends that the trial court allowed the prosecutor to unconstitutionally select a jury uncommonly willing to recommend a sentence of death by using the State's peremptory challenges to remove potential jurors who expressed doubts about capital punishment. The defendant concedes that this Court has rejected this argument many times. *E.g. State v. Bacon*, 326 N.C. 404, 414, 390 S.E.2d 327, 333 (1990); *State v. Spangler*, 314 N.C. 374, 380, 333 S.E.2d 722, 727 (1985). We continue to adhere to our prior holdings on this issue.

[4]    The defendant next assigns as error the trial court's refusal to allow defense counsel to rehabilitate jurors whom the State

STATE v. HILL

[331 N.C. 387 (1992)]

moved to excuse for cause because of their expressed inability to comply with the law. Specifically, the defendant contends that the trial court's failure to allow defense counsel to inquire into the jurors' beliefs on the death penalty and their ability to follow the law denied him due process of law. The defendant points only to the examination of prospective juror Carol Jordan Shumbera as an example of the trial court's purported error. A review of the trial transcript reveals that Ms. Shumbera unequivocally stated she would not be able to follow the law. In earlier cases, we have concluded that the defendant is not entitled to engage in attempts to rehabilitate such jurors by repeating the questions the jurors have already answered. *State v. Cummings*, 326 N.C. 298, 307, 389 S.E.2d 66, 71 (1990); *State v. Zuniga*, 320 N.C. 233, 250, 357 S.E.2d 898, 909, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). " 'When challenges for cause are supported by prospective jurors' answers to questions propounded by the prosecutor and by the court, the court does not abuse its discretion, at least in the absence of a showing that further questioning by defendant would likely have produced different answers, by refusing to allow the defendant to question the juror challenged [about the same matter].' " *Cummings*, 326 N.C. at 307, 389 S.E.2d at 71 (quoting *State v. Oliver*, 302 N.C. 28, 40, 274 S.E.2d 183, 191 (1983) ). The defendant has not made such a showing, and this assignment is without merit and is overruled.

[5] The defendant next assigns as error the trial court's failure to allow him to ask prospective jurors (1) what type of crimes they felt were deserving of the death penalty, (2) whether they understood that they might find the defendant guilty of something other than first-degree murder, (3) whether they believed that any type of premeditated murder was deserving of the death penalty, (4) whether they understood that all of them need not agree that a mitigating circumstance existed in order for individual jurors to consider it mitigating, and (5) whether they would "feel the need to hear from" the defendant in order to find him not guilty. We conclude that the trial court properly prevented the defendant from asking each of those questions in the context of the present case.

In *State v. Phillips*, 300 N.C. 678, 681-82, 268 S.E.2d 452, 455 (1980), we held that the trial court did not err by refusing to permit counsel for the defendant to ask a prospective juror whether the "defendant would have to prove anything to her before he

would be entitled to a verdict of guilty." In reaching that holding, we expressly stated that during jury selection,

> [c]ounsel should not fish for answers to legal questions *before the judge has instructed the juror on applicable legal principles by which the juror should be guided.* Counsel should not argue the case in any way while questioning the jurors. Counsel should not engage in efforts to indoctrinate, visit with or establish "rapport" with jurors. *Jurors should not be asked what kind of verdict they would render under certain named circumstances.*

*Id.* at 682, 268 S.E.2d at 455 (emphasis added). In the present case, each of the above-listed questions counsel for the defendant sought to ask represented attempts to "stake out" the jurors as to their answers to legal questions before the jurors had been informed in any manner of applicable legal principles by which they should be guided. In the context in which they were asked in this case, none of the rejected questions amounted to a proper inquiry as to whether the jury could follow the law or "whether the juror would be able to follow the trial court's instructions." *Id.; see State v. Hedgepeth,* 66 N.C. App. 390, 393-94, 310 S.E.2d 920, 922-23 (1984); N.C.G.S. § 15A-1214(c) (1988). The nature and extent of the inquiry made of prospective jurors on *voir dire* ordinarily rests within the sound discretion of the trial court. *State v. Brown,* 315 N.C. 40, 53, 337 S.E.2d 808, 820 (1985), *cert. denied,* 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988). The defendant has shown no abuse of discretion in the present case. This assignment of error is without merit and is overruled.

[6] In his next assignment of error, the defendant argues that he suffered prejudice requiring a new trial when the prosecutor, during questioning of prospective jurors, mentioned that both of the counsel for the defendant served with the Public Defender's Office. The defendant argues that the prosecutor's statements highlighted his impoverished status and created a bias among the jurors when they learned that their tax dollars were paying for his defense. The defendant did not object at trial to the prosecutor's statements. After the prosecutor mentioned the defense counsel's association with the Public Defender's Office a second time, the trial court intervened *ex mero motu* and directed the prosecutor

not to mention this fact again. The prosecutor complied with the directive of the trial court.

The defendant failed to object to the prosecutor's statements at trial. Therefore, this issue was not preserved for appellate review. N.C. R. App. P. 10(b)(1). In any event, our review of the transcript and record in this capital case reveals that the defendant himself testified extensively about his impoverished status and his reliance on various programs for support. The prosecutor's comment on his status could not have prejudiced him. This assignment is not properly before this Court and is dismissed.

[7] The defendant contends in his next assignment that the trial court erred by allowing Mrs. Hill to testify about the November 1989 incident when the defendant broke into her house and threatened to kill her. The defendant argues that this evidence is outside the scope of Rule 404(b) of the North Carolina Rules of Evidence. The defendant further contends that even if the testimony of Mrs. Hill in this regard was otherwise admissible, it should have been excluded as being unfairly prejudicial to the defendant.

Mrs. Hill testified on direct examination that on 29 November 1989 the defendant broke into her house, put a pistol to her throat, and threatened to kill her. Evidence of other offenses committed by the defendant is admissible under Rule 404(b) so long as it is relevant to the other facts at issue. *State v. Spaugh*, 321 N.C. 550, 364 S.E.2d 368 (1988). Rule 404(b) provides that while "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show he acted in conformity therewith," such evidence is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b) (1988). "Rule 404(b) state[s] a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). When a husband is charged, as here, with an attack upon his wife with intent to kill her, "the State may introduce evidence covering the entire period of his married life to show malice, intent and ill will toward the victim." *State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990). Evidence of the 29 November

1989 incident was directly related to the relationship of Mrs. Hill and the defendant shortly before he shot at her. It is one circumstance which tends to shed light on the crime charged by tending to show that approximately six weeks before the crime the defendant had the intent to kill his wife. The testimony involved a direct threat to Mrs. Hill made a few weeks before the assault and was relevant and admissible.

The defendant also argues that even if the evidence was not excludable under Rule 404(b), the trial court erred by failing to exclude it as being unfairly prejudicial under Rule 403 of the North Carolina Rules of Evidence. The decision whether to exclude otherwise admissible evidence under Rule 403 is left to the discretion of the trial court. *State v. Mason,* 315 N.C. 724, 340 S.E.2d 430 (1986). We find no abuse of discretion by the trial court in failing to exclude Mrs. Hill's testimony under the balancing test of Rule 403. This assignment of error is overruled.

[8] The defendant next assigns as error the trial court's denial of his motion for a mistrial after Detective Chris Jennings mentioned during her testimony the existence of a restraining order against the defendant. Under N.C.G.S. § 15A-1061, the trial court must declare a mistrial "if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C.G.S. § 15A-1061 (1988). In the present case, the trial court cured any error by withdrawing the challenged evidence from the jury's consideration and issuing a cautionary instruction. *State v. Smith,* 301 N.C. 695, 272 S.E.2d 852 (1981). Detective Jennings mentioned the restraining order only briefly during her testimony. The defendant immediately objected and moved to strike the testimony. The trial court granted the defendant's motion and gave the jury a proper cautionary instruction. As a result, the defendant can show no prejudice. Furthermore, the defendant during his own testimony mentioned the restraining order and thereby waived any error in this regard. We overrule this assignment of error.

[9] By his next assignment of error, the defendant argues that the trial court erred by admitting for illustrative purposes five photographs taken of the body of Randall Hill at the crime scene. According to the defendant, the photographs served no purpose

other than to inflame the jury and were unfairly prejudicial to the defendant.

Deputy Sheriff Patrick Hefner, the crime scene technician, testified about his observations at the crime scene. Hefner found Randall Hill entangled in the telephone cord and found a pistol in his front pants pocket. Hefner used the photographs to illustrate his testimony.

The determination of unfair prejudice due to the admission of photographs rests primarily within the sound discretion of the trial court. *State v. Mercer*, 275 N.C. 108, 120, 165 S.E.2d 328, 337 (1969), *overruled on other grounds by State v. Caddell*, 287 N.C. 266, 215 S.E.2d 348 (1975). The defendant made no showing that the State presented an excessive number of photographs or that the photographs were irrelevant. The defendant claimed he killed his son Randall in self-defense. The photographs showing the victim entangled in the cord with the pistol in his front pants pocket and the location of the gunshot wounds on the victim's body illustrated the testimony of the witness and tended to refute the defendant's explanation of the killing. We conclude that the trial court did not abuse its discretion in admitting the photographs, and we overrule this assignment of error.

[10] The defendant next assigns as error the trial court's denial of his motion to dismiss the charge of first-degree murder for insufficiency of the evidence. The defendant argues in this regard that the State presented insufficient evidence of premeditation and deliberation. According to the defendant, the evidence presented was only sufficient to support a conviction for second-degree murder.

The State's evidence tended to show that the defendant left a garage near his wife's house when his wife arrived home from work. As he was leaving, the defendant told some teenagers nearby that "You're going to see some blue lights now." The defendant then retrieved a .22 caliber rifle from a trailer on the property and went to the house carrying the loaded gun. After entering the house, the defendant pointed the rifle at his son. When the defendant's son went to telephone for help, the defendant followed him to another room and shot him three times. The defendant then fled. We conclude that this evidence was sufficient to establish the elements of premeditation and deliberation and to support a conviction for first-degree murder. *See State v. Austin*, 320 N.C. 276, 294-95, 357 S.E.2d 641, 653, *cert. denied*, 484 U.S. 916, 98

L. Ed. 2d 224 (1987); *State v. Bullard*, 312 N.C. 129, 160-61, 322 S.E.2d 370, 388-89 (1984).

**[11]** By his next assignment of error, the defendant argues that the trial court erred in sustaining numerous objections by the State to testimony by several defense witnesses, thereby excluding testimony of the defendant and defense witnesses that would have tended to show the defendant's long-term excessive consumption of alcohol and abuse of prescribed medication. The defendant contends that this evidence was admissible under Rule 406 as tending to establish his habit of alcohol and drug abuse ·and, thus, would have permitted the jury to infer that he was under the influence of alcohol and drugs on the day of the murder. Without this evidence, the defendant argues he was unable to establish the defense of diminished capacity.

The trial court sustained the State's objection to questions posed to the defendant as to whether he was in the habit of taking medication. Rule 406 of the North Carolina Rules of Evidence provides:

> Evidence of habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

N.C.G.S. § 8C-1, Rule 406 (1988). Generally, only direct evidence of the defendant's impairment at the time of the murder is relevant to the defense of diminished capacity. *See State v. Pinch*, 306 N.C. 1, 14-15, 292 S.E.2d 203, 216, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *overruled in part on other grounds by State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988) and *State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988). Mere evidence of intemperance ordinarily does not meet the "invariable regularity" standard required of evidence of habit. 1A John H. Wigmore, *Evidence* § 95 (Peter Tillers rev. 1983) [hereinafter Wigmore, *Evidence*]; *cf. Levin v. U.S.*, 338 F.2d 265 (D.C. Cir. 1964), *cert. denied*, 379 U.S. 999, 13 L. Ed. 2d 701 (1965) (defendant's habit of being at home on the Sabbath not admissible to show he was in fact at home on a particular day).

In any event, the trial court did not err in sustaining the State's objections here, as the questions posed to the defendant

were either not in the proper form or were without proper foundation. The trial court properly sustained the State's objections to the leading questions asked of the defendant concerning his long-term intemperance. The trial court did allow questions dealing with the defendant's use of alcohol and Darvon on the day of the killing. Finally, the defendant can show no prejudice because ample evidence of the defendant's long-term alcohol and drug abuse was already before the jury.

The defendant also argues under this assignment that the trial court erred by excluding certain testimony of Leroy Luther regarding the defendant's consumption of alcohol. Luther had already testified generally about the defendant's use of alcohol. The defendant's offer of proof as to other testimony Luther would have given added no additional information. Therefore, the defendant could not have been harmed by the exclusion of Luther's proffered testimony.

[12] The defendant also argues under this assignment that the trial court erred by excluding proffered testimony of Teresa Taylor. The defendant lived with Teresa Taylor beginning in September or October before the January 1990 killing of Randall Hill. Taylor testified that the defendant took some prescription medication on the day of the killing. In an offer of proof by the defendant, Taylor stated that she had no knowledge of the defendant's drug use before September 1989 and had no knowledge of the defendant's use of alcohol on the day of the killing. The defendant failed to lay a proper foundation to establish Taylor's proffered testimony as evidence of habit. See 1A Wigmore, *Evidence* § 95. Taylor had limited knowledge of the defendant's long-term substance abuse, because she had only lived with him for a few months. Also, the questions posed by the defendant were leading and assumed facts not in evidence. The trial court properly excluded Taylor's testimony regarding the defendant's use of alcohol and drugs at times prior to the date of the crimes for which the defendant was on trial.

The defendant also argues under this assignment that the trial court erred in sustaining the State's objections to portions of the testimony of defense witness Robert Garner Warren. The defendant made no offer of proof concerning Warren's proffered testimony. Therefore, the defendant failed to preserve this issue for appellate review. *State v. King*, 326 N.C. 662, 674, 392 S.E.2d 609, 617 (1990).

[13] Dr. Richard Reed Felix, a psychiatrist, testified regarding the defendant's mental condition. According to Dr. Felix, the defendant suffered some brain damage and the defendant's use of alcohol and drugs worsened this condition. Dr. Felix expressed his opinion that, in light of the defendant's condition, "[I]f he had formed a plan, he wouldn't have been able to remember it." The defendant argues under this assignment that the trial court erred when it excluded Dr. Felix's response to a question on the effect of medication on the defendant's brain damage. The exclusion was proper because the doctor's response was "Well, we don't know, but the. . . ." The trial court by sustaining the State's objection merely cut off a speculative response by Dr. Felix. *See State v. Clark*, 324 N.C. 146, 160, 377 S.E.2d 54, 62 (1989). Furthermore, the defendant made no offer of proof of Dr. Felix's testimony excluded by the trial court. Therefore, we can only speculate as to what his answer would have been. "[I]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985), *quoted in*, *State v. King*, 326 N.C. 662, 674, 392 S.E.2d 609, 617 (1990).

In sum, the exclusion of the evidence the defendant complains of in this assignment was not error because the questions were not in proper form or the defendant failed to make an offer of proof. Additionally, the record already contained extensive evidence of the defendant's long-term history of alcohol and drug abuse, and the defendant received the full benefit of this evidence. We overrule this assignment of error.

[14] The defendant next assigns as error the action of the trial court in allowing the State to cross-examine him about adulterous relationships. The defendant argues that evidence of such relationships was irrelevant. The defendant testified at trial that he went to the home of his estranged wife on 10 January because she invited him there to discuss the possibility of reconciliation. The State contended that the defendant's relationship with Teresa Taylor tended to refute the defendant's testimony that his estranged wife wished to reconcile. This issue is not properly before us because the defendant waived any error by presenting earlier similar evidence. *State v. Lloyd*, 321 N.C. 301, 308-09, 364 S.E.2d 316, 322, *vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18

(1988). During his cross-examination of Mrs. Hill, the defendant himself had already introduced evidence of his adulterous relationship with Ms. Taylor. This assignment is overruled.

[15] The defendant next assigns as error the trial court's failure to admit into evidence the defendant's discharge summary from Highland Psychiatric Hospital, dated 25 August 1987. The defendant contends the discharge summary was properly authenticated by Dr. Felix and was admissible under Rule 803(6) of the North Carolina Rules of Evidence. We conclude the defendant failed to lay a proper foundation for the admission of the summary. Dr. Felix testified that he reviewed the summary in forming his opinion, but he never stated affirmatively that the summary contained facts upon which he based his opinion regarding the defendant's state of mind.

Furthermore, the defendant suffered no prejudice. Dr. Felix testified regarding the same facts as those contained in the summary. The admission of the summary would have been redundant. *Lloyd*, 321 N.C. at 314, 364 S.E.2d at 325. Assuming *arguendo* that the discharge summary was admissible under Rule 803(6), we thus conclude that its exclusion was harmless. This assignment is overruled.

[16] The defendant next assigns as error the trial court's failure to rearrange the verdict form by placing the blank for "Not Guilty" at the top, followed by the blanks for the lesser included offenses, and then by the blank for first-degree murder. The defendant cites no authority supporting his contention, and we have found none. The trial court properly instructed the jury using the pattern jury instructions on the elements of the offenses submitted for the jury's consideration and on the presumption of the defendant's innocence. The defendant points to nothing in the record indicating that the jury failed to follow the instructions. *See State v. Clark*, 324 N.C. 146, 165-67, 377 S.E.2d 54, 66 (1989). This assignment is overruled.

[17] The defendant next assigns as error the trial court's use of the word "victim" rather than the term "deceased" in the jury charge. The use of the word "victim" in the jury charge was not improper. *State v. Allen*, 92 N.C. App. 168, 171, 374 S.E.2d 119, 121 (1988), *cert. denied*, 324 N.C. 544, 380 S.E.2d 772 (1989). By using the term "victim," the trial court was not intimating that the defendant committed the crime. This assignment of error is overruled.

**[18]** The defendant next assigns as error the trial court's action of giving its instructions on flight immediately after giving its instructions on first-degree murder. The defendant contends this order of the instructions violated the rule that the jury charge should clarify the issues, explain the law, and eliminate confusion of the jury. *State v. Cousin*, 292 N.C. 461, 233 S.E.2d 554 (1977). The trial court properly instructed the jury on the use of the evidence of the defendant's flight from the crime scene. Nothing in the record tends to indicate that the instruction might have confused or misled the jury. The defendant has shown no prejudice; therefore, this assignment is overruled.

**[19]** The defendant next assigns error to the State's questioning of Dr. Felix about the defendant's adulterous relationship with Teresa Taylor. The State asked Dr. Felix if the defendant had left his wife and entered into an adulterous relationship with Ms. Taylor. The defendant claims that the use of the term "adulterous" was prejudicial. Assuming error *arguendo*, the defendant has shown no prejudice. The defendant himself testified regarding his adulterous relationship with Teresa Taylor. Teresa Taylor also testified regarding her relationship with the defendant. We therefore overrule this assignment of error.

The defendant next assigns as error the trial court's exclusion of certain mitigating evidence during his capital sentencing proceeding conducted under N.C.G.S. § 15A-2000. The Supreme Court of the United States has held that a capital " 'sentencer [may] not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' " *Eddings v. Oklahoma*, 455 U.S. 104, 110, 71 L. Ed. 2d 1, 8 (1982) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990 (1978)). Bearing this rule in mind, we turn to consider *seriatim* each of the trial court's rulings which the defendant contends, under this assignment, excluded proper mitigating evidence.

**[20]** Lynn Cunningham, a family therapist, testified that the defendant participated in counseling sessions with Teresa Taylor and her son Edward. The trial court refused to allow testimony by Cunningham or by Dean Vic, a court counselor, regarding the nature of Edward's illness. The defendant made no offer of proof of Cunningham's response or Vic's response. Therefore, the propriety

of the trial court's exclusion of their testimony is not before us, because we can only speculate as to what their responses would have been. *State v. King*, 326 N.C. 662, 674, 392 S.E.2d 609, 617 (1990).

[21] Edward Taylor testified extensively regarding his relationship with the defendant, but the trial court did not allow him to answer the question, "If the jury were to vote to kill him [the defendant], how would you feel?" How the child might feel if the defendant were to be executed was not a proper matter for consideration in sentencing the defendant, as it did not involve "any aspect" of the defendant's "character or record" or "any of the circumstances of the offense." *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 990 (1978).

The jury heard evidence of the defendant's interaction with Edward. The trial court thereafter properly sustained an objection to a question to Dean Vic regarding the effect of the defendant's incarceration on Edward, as no foundation for the question had been established. There was no evidence that Vic dealt with Edward after the defendant's arrest or had any idea of the effect of the defendant's incarceration upon him. Further, Edward Taylor's feelings about the defendant's incarceration were not relevant to the issues to be decided during the sentencing proceeding. *Id.*

[22] A friend of the defendant, Jim James, testified that the defendant and another friend had been bitten by a rabid dog when they were children. James testified that the rabies treatment was painful and that the defendant first began to drink after the treatment. The defendant argues that the trial court erred by refusing to allow James to testify that the defendant's friend who had been bitten by the rabid dog committed suicide fifteen years later. The suicide occurred fifteen years after the rabies treatment and the defendant established no linkage between the rabies treatment, the friend's later suicide, and the defendant. We conclude that such evidence was not relevant in the sentencing proceeding. *Id.*

The trial court did not allow a response by Thomas Rogers, a neighbor of the Hill family, when he was asked whether the defendant's father had ever been in jail. The defendant made no offer of proof and therefore cannot show prejudice by this exclusion. *King*, 326 N.C. at 674, 392 S.E.2d at 617.

Having considered each of the defendant's many contentions under this assignment of error, we conclude that none has merit. This assignment is overruled.

[23] The defendant next contends that the trial court erred when it declined to submit the statutory mitigating circumstance of the defendant's age for the jury's consideration. N.C.G.S. § 15A-2000(f)(7) (1988). The defendant argues that his chronological age is fifty-four, but that his physiological age is in fact seventy-five to eighty and justified submission of this mitigating circumstance. Advanced age should be submitted for jury consideration as a mitigating circumstance upon proper evidence. *State v. Porter*, 326 N.C. 489, 511, 391 S.E.2d 144, 158 (1990). Chronological age, however, ordinarily is not determinative. *Id.* Here, the defendant presented no evidence of advanced physiological age. His chronological age of fifty-four did not, standing alone, entitle him to have this mitigating circumstance submitted. We overrule this assignment of error.

The defendant next assigns as error the trial court's refusal to submit three nonstatutory mitigating circumstances to the jury. The three nonstatutory mitigating circumstances requested by the defendant but not submitted by the trial court were (1) residual or lingering doubt as to the defendant's guilt, (2) trauma the defendant suffered as a result of the suicide of a close friend and as a result of receiving rabies treatment, and (3) the defendant's positive influence on an emotionally handicapped child. The defendant contends that the failure to submit these three nonstatutory mitigating circumstances on the issues and recommendation form given the jury during the capital sentencing proceeding was prejudicial error. We disagree.

> In order for defendant to succeed on this assignment, he must establish that (1) the nonstatutory mitigating circumstance is one which the jury could reasonably find had mitigating value, and (2) there is sufficient evidence of the existence of the circumstance to require it to be submitted to the jury. Upon such showing by the defendant, the failure by the trial judge to submit such nonstatutory mitigating circumstance to the jury for its determination raises federal constitutional issues.

*State v. Benson*, 323 N.C. 318, 325, 372 S.E.2d 517, 521 (1988) (citations and footnote omitted). Bearing these principles in mind, we turn to consider the trial court's failure to submit the three

STATE v. HILL

[331 N.C. 387 (1992)]

nonstatutory mitigating circumstances at issue here on the form given the jury.

[24] Trial courts should not submit lingering doubt of guilt as a mitigating circumstance. *See Franklin v. Lynaugh*, 487 U.S. 164, 101 L. Ed. 2d 155, *reh'g. denied*, 487 U.S. 1263, 101 L. Ed. 2d 976 (1988) (submission of doubt of guilt as mitigator not constitutionally required). Lingering or residual doubt as to the defendant's guilt does not involve the defendant's character or record, or the circumstances of the offense. *Id.* Therefore, residual doubt is not a relevant circumstance to be submitted in a capital sentencing proceeding.

[25] The trial court also properly refused to submit the requested nonstatutory mitigating circumstance, "The defendant suffered trauma as a child due to the suicide of a close friend." The defendant presented no evidence that the death of his friend caused him any trauma. The defendant never mentioned the friend's suicide to his psychiatrist or during his testimony. We conclude that no reasonable juror could have found this mitigating circumstance to exist from the evidence offered by the defendant. Therefore, the trial court did not err in refusing to submit this nonstatutory mitigating circumstance.

[26] The defendant also contends under this assignment that the trial court erred by failing to submit for jury consideration a nonstatutory mitigating circumstance to the effect that he had suffered trauma as a result of being bitten by a rabid dog as a child. The record on appeal reflects that the defendant did not include this nonstatutory mitigating circumstance among those he listed in his written request for instructions on mitigating circumstances. Nor does the record reflect that the defendant ever made a timely *written* request that this nonstatutory mitigating circumstance be submitted to the jury for its consideration. Absent such a request, the failure of the trial court to submit the nonstatutory mitigating circumstance for the jury's consideration was not error. *See State v. Cummings*, 326 N.C. 298, 324, 389 S.E.2d 66, 80-81 (1990).

[27] The defendant also argues under this assignment that the trial court erred by failing to comply with the defendant's written request that it submit for the jury's consideration the mitigating circumstance that the "defendant was a positive influence on a behaviorally-emotionally handicapped child." In *Cummings*, we held

that "where a defendant makes a timely *written* request for a listing *in writing* on the form of possible nonstatutory mitigating circumstances that are supported by the evidence and which the jury could reasonably deem to have mitigating value, the trial court must put such circumstances in writing on the form." *Id.* at 324, 389 S.E.2d at 80 (emphasis in the original). Our holding in *Cummings* was made applicable prospectively to all capital proceedings tried after 1 March 1990. *Id.* at 324, 389 S.E.2d at 81. The case at bar was tried at the 2 October 1990 Session of Superior Court, Buncombe County, and, therefore, the holding of *Cummings* governs here. *Id.* The evidence presented by the defendant during the sentencing phase was sufficient to support submission of this circumstance, which a reasonable jury could find to be a mitigating circumstance. Therefore, we must conclude that the trial court erred by not submitting this nonstatutory mitigating circumstance on the issues form to the jury.

Our conclusion that the trial court erred does not end our consideration of this issue, however, because both errors in failing to submit a nonstatutory mitigating circumstance altogether and errors in failing to include such nonstatutory mitigating circumstances in writing on the form to be given the jury are subject to harmless error analysis. *Id.* Assuming *arguendo* that this error by the trial court amounted to constitutional error under *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), we nevertheless conclude, for reasons which follow, that it was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988).

In *Cummings*, the trial court only submitted two mitigating circumstances, both of which were statutory: "lack of significant prior criminal activity" and "any other circumstance or circumstances arising from the evidence which [the jury deems] to have mitigating value." 326 N.C. at 322, 389 S.E.2d at 79. The trial court submitted none of the nonstatutory mitigating circumstances submitted by the defendant. *Id.* In contrast, in the present case, the trial court failed to submit only three of the ten nonstatutory mitigating circumstances proposed by the defendant. We have already concluded in this opinion that the trial court's failure to submit two of those three was not error. We now conclude that all of the evidence of the third nonstatutory mitigating circumstance not submitted — that the "defendant was a positive influence on a behaviorally-emotionally handicapped child" — was considered by the jury under the mitigating circumstance of the defendant's good character and

the catch-all mitigating circumstance. The trial court's error in failing to submit all of the defendant's requested nonstatutory mitigating circumstances was harmless here, where it is clear the jury was not prevented from considering any potentially mitigating evidence. *See State v. Greene*, 324 N.C. 1, 20-22, 376 S.E.2d 430, 442 (1989), *vacated and remanded on other grounds*, 494 U.S. ---, 108 L. Ed. 2d 603 (1990). The jury was allowed to consider and must have given full consideration to all evidence of the defendant's positive influence on the child in question when the jury considered the good character and the catch-all mitigating circumstances. By submitting these mitigating circumstances in writing on the form given the jury, the trial court afforded the jury the flexibility necessary to consider all of the evidence of the defendant's good character, including evidence of his positive influence on the child. *Cf. Greene*, 324 N.C. at 20-22, 364 S.E.2d at 442. The trial court by its error here did not preclude the jury from considering any mitigating evidence.

Finally, the particular mitigating evidence supporting this particular nonstatutory mitigating circumstance was of little import, given the overwhelming evidence supporting the defendant's conviction and the aggravating circumstances found by the jury. For the aforementioned reasons, we conclude the State has shown that the trial court's failure to submit this nonstatutory mitigating circumstance in writing on the form given the jury was harmless beyond a reasonable doubt. This assignment of error is overruled.

[28] The defendant next assigns as error the trial court's action in overruling his objection to the prosecutor's statement in closing arguments to the jury: "[I]f you chose [sic] not to exercise the option of the death penalty, can you guarantee that Zane Hill will not go get a .22 automatic sometime in the future and kill again?" The defendant contends that the effect of the prosecutor's statement was to prompt jury consideration of the possibility of parole. The prosecutor never mentioned the term "parole" and never argued the consequences of a life sentence. This assignment is without merit. *State v. Johnson*, 298 N.C. 355, 366-67, 259 S.E.2d 752, 760 (1979).

[29] By his next assignment of error, the defendant argues that the trial court erred in instructing the jury as to the manner in which the jury should consider nonstatutory mitigating circumstances. The trial court instructed the jury that it must first

STATE v. HILL

[331 N.C. 387 (1992)]

find whether each *nonstatutory* mitigating circumstance existed and then whether that circumstance had mitigating value. The defendant contends that once the jurors find that a *nonstatutory* mitigating circumstance exists, they cannot give it no weight in their deliberations. We have rejected the identical argument in *State v. Fullwood*, 323 N.C. 371, 395-97, 373 S.E.2d 518, 533-34 (1988), *vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *remanded for new sentencing hearing*, 329 N.C. 233, 404 S.E.2d 842 (1991), and *State v. Huff*, 325 N.C. 1, 58-61, 381 S.E.2d 635, 668-70 (1989), *vacated on other grounds*, 494 U.S. ---, 111 L. Ed. 2d 777 (1990), *remanded for new sentencing hearing*, 328 N.C. 532, 402 S.E.2d 577 (1991). This assignment of error is overruled.

[30] The defendant argues by his next assignment that the trial court erred in instructing the jury on the aggravating circumstance that the murder was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against other persons. N.C.G.S. § 15A-2000(e)(11) (1988). The trial court instructed the jury:

If you find from the evidence beyond a reasonable doubt that, in addition to killing the victim, the defendant on or about the alleged date was engaged in a course of conduct which involved the commission of another crime of violence against another person and that these other crimes were included in the same course of conduct in which the killing of the victim was also a part, you would find this aggravating circumstance.

The defendant contends that this instruction erroneously allowed the jury to consider events occurring over a ten year period in determining whether this aggravating circumstance existed. He argues that these events included the alleged attempt by the defendant to kill Mrs. Hill at the time he killed Randall on 10 January 1990, the defendant's prior acts directed towards his wife in November 1989 and on 1 January 1990, and an assault upon a law enforcement officer which occurred in 1980. We do not agree.

The trial court in its instruction on the course of conduct aggravating circumstance directed the jury that it was to consider other crimes of violence occurring "on or about" *the day the defendant killed Randall*, thus indicating that the events the jury could consider must be closely related in time to that killing. The trial court also used the terms "crime" and "person" in their singular

forms in the challenged instruction, which tended, in light of the evidence in the present case, to indicate that the jury could only consider the defendant's attempt to kill Mrs. Hill on 10 January 1990 and not other events.

The course of conduct aggravating circumstance may in some situations involve crimes committed over several hours, *State v. Williams*, 305 N.C. 656, 292 S.E.2d 243, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), or over several days, *State v. Price*, 326 N.C. 56, 388 S.E.2d 84, *vacated on other grounds*, --- U.S. ---, 112 L. Ed. 2d 7 (1990). We conclude that the trial court's instruction in the present case properly focused the jury's consideration of the course of conduct aggravating circumstance by limiting the jury's consideration to the conduct involved in the defendant's attempt to kill Mrs. Hill on 10 January 1990. Therefore, the trial court did not err, and this assignment is overruled.

[31] The defendant next assigns as error the trial court's instructions to the jury on two mitigating circumstances. The trial court instructed the jury on the mitigating circumstance that the murder was committed while the defendant was under the influence of a mental or emotional disturbance in the following manner:

> For this mitigating circumstance to exist, it is enough that the defendant's mind or emotions were disturbed, from any cause, and that he was under the influence of the disturbance when he killed the victim. You would find this mitigating circumstance if you find some type of damage to his brain and that as a result, the defendant was under the influence of mental or emotional disturbance when he killed the victim.

The defendant argues that the trial court's instructions improperly limited the jury in its consideration of evidence supporting this mitigating circumstance. The defendant claims that the instructions prevented the jury from considering the testimony of Dr. Felix concerning the defendant's jealousy and his fear of separation from his wife. We simply do not agree. The instructions expressly directed the jury that in order to find this mitigating circumstance, "it is enough that the defendant's mind or emotions were disturbed, from any cause." This instruction clearly prevented the jury being precluded from the consideration of any evidence tending to support this mitigating circumstance. This argument is without merit.

[32]  The defendant next argues under this assignment that the trial court erred in instructing the jury on the mitigating circumstance that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. The defendant specifically complains that the trial court did not expressly inform the jury that it could consider the defendant's drug and alcohol consumption on the day of the killing when determining whether this mitigating circumstance existed. We assume *arguendo* that the evidence in the present case would have permitted the jury to take into account the defendant's alcohol and drug use on the day of the killing when considering this mitigating circumstance. However, the trial court is not required to summarize the evidence during its instructions to the jury. N.C.G.S. § 15A-1232 (1988). Although the trial court did not completely review the evidence or specifically instruct the jury that it could consider the evidence of the defendant's drug and alcohol use on the day of the killing when determining whether the defendant's capacity to appreciate the criminality of his conduct or conform his conduct to law was impaired, the trial court's instructions did not preclude the jury from considering and weighing that evidence for this purpose. This assignment is overruled.

[33]  By his next assignment the defendant argues that the trial court erred by failing to give his tendered instruction generally defining the term "mitigating circumstance" and expressly authorizing the jury to base its verdict on sympathy arising from the mitigating evidence. The defendant first argues under this assignment that the trial court erred by failing to submit his proposed instruction generally defining the term "mitigating circumstance." The trial court gave the jury a correct general definition of "mitigating circumstance" drawn directly from our pattern jury instructions. *See* N.C.P.I.—Crim. 150.10 (1990). Where a defendant requests an instruction which is supported by evidence and which is a correct statement of law, the trial court must give the instruction *in substance. Fullwood,* 323 N.C. at 390, 373 S.E.2d at 529. The trial court need not give the instruction in the words the defendant requests, however. *Id.* Here, the trial court's instructions correctly defined "mitigating circumstance." The trial court's failure to give the precise instruction requested by the defendant was not error.

[34]  The defendant next argues under this assignment of error that the trial court erred by rejecting his request that it specifically

instruct the jury during the capital sentencing proceeding that "you are entitled to base your verdict upon any sympathy or mercy you may have for the defendant that arises from the evidence presented in this case." In *California v. Brown*, 479 U.S. 538, 93 L. Ed. 2d 934 (1987), the Supreme Court of the United States held that an instruction to jurors during capital sentencing that they "must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling" did not unconstitutionally deny the defendant a fair consideration of the full range of all of the evidence introduced in mitigation. The Supreme Court indicated *inter alia* that the instruction did not direct the jury to disregard considerations such as sympathy entirely, but only to disregard such considerations where they did not arise from the evidence introduced in mitigation. *Id.* However, while the Supreme Court held in that case that an instruction that the jury should not consider "mere sympathy" unsupported by mitigating evidence was not error, the Supreme Court did not hold that an instruction directing the jury to consider and weigh sympathies arising from mitigating evidence was constitutionally required. *Id.* We conclude that the better and constitutionally safer course for trial courts is to avoid mentioning sympathy in instructions concerning mitigating circumstances in capital sentencing proceedings, as there will always be some danger that some jurors will misconstrue any suggestion they may consider sympathy during sentencing as giving them the type of unbridled discretion as to sentencing which violates the Eighth Amendment as interpreted in *Gregg v. Georgia*, 428 U.S. 153, 49 L. Ed. 2d 859 (1976). We believe that trial courts should not refer to "sympathy." Instead, when instructing the jury to consider the statutory catch-all mitigating circumstance of *"[a]ny other circumstance arising from the evidence* which the jury deems to have mitigating value," trial courts should emphasize that the jury must weigh all mitigating considerations whatsoever which it finds supported by evidence. N.C.G.S. § 15A-2000(f)(9) (1988) (emphasis added). We believe that this course will lead the jury to consider all of the mitigating evidence introduced as required by *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), without the risk of encouraging the jury to exercise unbridled, and thus unconstitutional, discretion. As the trial court submitted the statutory catch-all mitigating circumstance after proper instructions in the present case, we conclude that it did not err in this regard. For the foregoing reasons, this assignment of error is overruled.

STATE v. HILL

[331 N.C. 387 (1992)]

[35]   The defendant has made no assignment of error or argument relating to *Morgan v. Illinois*, --- U.S. ---, --- L. Ed. 2d ---, 52 CCH S. Ct. Bull. B2665 (U.S. June 15, 1992). As *Morgan* was decided after briefs were filed and oral arguments conducted, we elect to review any possible violation of its holding on our own motion. In that recent case, the Supreme Court of the United States held that the trial court's refusal to ask prospective jurors "If you found Derick Morgan [the defendant] guilty, would you automatically vote to impose the death penalty no matter what the facts are?" was prejudicial error and violated the defendant's rights under the Fourteenth Amendment of the Constitution of the United States. We have thoroughly reviewed the transcript of the present case. The defendant was permitted to seek information on the views of prospective jurors on whether they would automatically sentence the defendant to death regardless of the facts of the case. The defendant received answers on this matter, and we conclude that his rights under the Fourteenth Amendment as set forth in *Morgan* were not violated.

Having determined that the defendant's trial and capital sentencing proceeding were free from prejudicial error, we turn to duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 354-55, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstances on which the sentence of death was based, (2) whether the death sentence was entered under the influence of passion, prejudice, or other arbitrary consideration, and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *Id.*

We have thoroughly examined the record, transcripts, and briefs in the present case. We have also closely examined those exhibits which were forwarded to this Court. We conclude that the record fully supports the aggravating circumstances found by the jury. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration.

[36]   We turn now to our final statutory duty of proportionality review. This duty requires that we determine whether the death sentence in the present case is excessive or disproportionate to

## STATE v. HILL

[331 N.C. 387 (1992)]

the penalty imposed in similar cases, considering the crime and the defendant. *Id.*

> In essence, our task on proportionality review is to compare the case at bar with other cases in the pool which are roughly similar with regard to the crime and the defendant, such as, for example, the manner in which the crime was committed and defendant's character, background, and physical and mental condition.

*State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985), *quoted in*, *State v. Lloyd*, 321 N.C. 301, 322, 364 S.E.2d 316, 329, *vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988).

In the present case, the defendant was convicted of first-degree murder based on premeditation and deliberation and also convicted of assault with a deadly weapon upon another victim with intent to kill. The jury found all three aggravating circumstances submitted to exist; the defendant had been previously convicted of a felony involving the use of violence to the person, the murder was part of a course of conduct in which the defendant engaged and that included the commission by the defendant of other crimes of violence against other persons, and the murder was committed for the purpose of avoiding or preventing lawful arrest. The jury found the following mitigating circumstances: (1) "The defendant voluntarily submitted himself for alcohol and drug abuse treatment prior to the murder"; (2) "The defendant has exhibited good conduct in jail following his arrest"; (3) "The defendant has spinal arthritis and was disabled"; (4) "The defendant's alcohol abuse was episodic"; and (5) "The defendant began his use of alcohol at an early age."

In our proportionality review, we must compare the present case with other cases in which this Court has ruled upon the proportionality issue. This case is not particularly similar to any case in which this Court has found the death penalty disproportionate and entered a sentence of life imprisonment. Each of those cases included facts not present here.

In *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988), the defendant was convicted solely on the theory of felony murder. The jury did not find premeditation and deliberation. The jury found only one aggravating circumstance, murder for pecuniary gain. The jury found as mitigating circumstances that (1) the de-

fendant had no significant history of prior criminal activity, (2) the defendant was under the influence of an emotional or mental disturbance, (3) the defendant confessed to the murder and cooperated with the police, (4) the defendant consented to a search of his motel room, car, home, and storage bin, and (5) that the defendant was abandoned by his natural mother at an early age. *Benson* is easily distinguishable from the present case. In the present case, unlike *Benson*, the jury found that the defendant had committed the first-degree murder after premeditation and deliberation. In addition, the jury here found three aggravating circumstances.

In *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987), the defendant was convicted solely on a felony murder theory,. and the majority of this Court felt there was little or no evidence of a premeditated killing. In the present case, the defendant was convicted of having committed first-degree murder after premeditation and deliberation. Additionally, he was found guilty of a contemporaneous assault with a deadly weapon with intent to kill another person. *Stokes* is also easily distinguishable from the present case, because Stokes' co-defendant, whom the majority of this Court seemed to believe more culpable than Stokes, was sentenced to life imprisonment.

In *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988), the only aggravating circumstance found by the jury was that the murder for which Rogers was convicted was part of a course of conduct which included the commission of violence against another person or persons. In the present case, the jury found that aggravating circumstance *plus* two additional aggravating circumstances.

In concluding that the death penalty was disproportionate in *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985), this Court noted that the jury found as aggravating circumstances that the murder was committed during the commission of a robbery or burglary and that it was committed for pecuniary gain. In the present case, the defendant was convicted of first-degree murder and assault with a deadly weapon with the intent to kill. This Court distinguished *Young* from cases where the death sentence had been upheld by focusing on the failure of the jury in that case to find either the aggravating circumstance that the murder was especially heinous, atrocious or cruel, or the aggravating circumstance that the murder was committed as part of a course

of conduct which included the commission of violence against another person or persons. *Id.* at 691, 325 S.E.2d at 194. The present case is distinguishable from *Young* because, among other things, the jury found the course of conduct aggravating circumstance to exist.

In *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984), the single aggravating circumstance found was that the murder was committed against a law enforcement officer engaged in the performance of his official duties. In *Hill*, the officer had chased down the defendant on foot, and the officer had been shot as the two men had struggled for control of the officer's gun. The *Hill* case differs markedly from this case in which the defendant walked up to his estranged wife's house with a rifle, shot his son three times, then went outside and attempted to kill his fleeing wife.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983), the evidence tended to show that the defendant and a group of his friends were riding in a car when the defendant taunted the victim by telling him he would shoot him and questioning whether the victim believed the defendant would shoot him. The defendant shot the victim, but then immediately directed the driver to proceed to the emergency room of the local hospital. The jury found as aggravating circumstances that the crime was especially heinous, atrocious, or cruel, and that it was a part of a course of conduct including crimes of violence against other persons. In concluding that the death penalty was disproportionate there, we focused on the defendant's attempt to obtain medical assistance for the victim and the lack of any apparent motive for the killing. In contrast, the defendant in the present case shot his son Randall to prevent him from seeking help from law enforcement officers, and the defendant never sought medical assistance for Randall. The defendant's prior assaults on his estranged wife and his failed attempts to reconcile with her exhibit a clear motive for the attack on his wife and the murder of his son who was intervening in their reconciliation.

In *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983), the defendant was on foot and waved down the victim as the victim passed in his truck. Not long thereafter, the victim's body was discovered in the truck. He had been shot twice in the head and his wallet was gone. The jury convicted the defendant of first-degree murder only on a felony murder theory and found the aggravating circumstance that the murder was committed for pecuniary

gain. In contrast, the defendant in the present case was found to have committed first-degree murder after premeditation and deliberation, and the jury found three aggravating circumstances.

For the foregoing reasons, we conclude that each of the cases in which we have found the death penalty to be disproportionate is distinguishable from the present case. The present case is not strikingly similar to any of those cases.

We next must compare this case with the cases in which we have found the death penalty to be proportionate. Although we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty of proportionality review, we have previously stated, and we reemphasize here, that we will not undertake to discuss or cite all of those cases each time we carry out that duty. *State v. Williams*, 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). "The Bar may safely assume that we are aware of our own opinions filed in capital cases arising since the effective date of our capital punishment statute, 1 June 1977." *Id.* at 81-82, 301 S.E.2d at 356.

Here, it suffices to say we conclude that the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the sentence of death disproportionate. *E.g., State v. Lawson*, 310 N.C. 632, 314 S.E.2d 493 (1984) (defendant during the course of a burglary shot and killed one victim and attempted to murder another); *State v. Roper*, 328 N.C. 337, 402 S.E.2d 600, *cert. denied*, --- U.S. ---, 116 L. Ed. 2d 232 (1991) (defendant murdered a man and then raped his girlfriend); *State v. Vereen*, 312 N.C. 499, 324 S.E.2d 250, *cert. denied*, 471 U.S. 1094, 85 L. Ed. 2d 526 (1985) (defendant murdered seventy-two year old woman then stabbed and sexually assaulted the victim's mentally retarded daughter); *State v. McDowell*, 301 N.C. 279, 271 S.E.2d 286 (1980), *cert. denied*, 450 U.S. 1025, 68 L. Ed. 2d 220 (1981) (defendant stabbed a four year old child and assaulted her fourteen year old sister). The evidence presented in the present case was that the defendant deliberately entered the house of his estranged wife and threatened his wife and his son with a rifle. The defendant then deliberately shot his son three times when his son attempted to telephone law enforcement authorities for help. The defendant then struck his wife with the butt of his rifle when she came to her mortally wounded son. If the defendant had not had to reload the rifle, giving Mrs. Hill

time to escape, the defendant would likely also have shot and killed her in the bedroom. Having failed to do so, the defendant pursued her and attempted to shoot her as she was running away from the house. After comparing this case carefully with all others in the pool of "similar cases" used for proportionality review— including all those in which the jury recommended either death or a life sentence—"[w]e cannot say that it does not fall within the class of first degree murders in which we have previously upheld the death penalty." *State v. Brown*, 315 N.C. 40, 71, 337 S.E.2d 808, 830 (1985), *quoted in Lloyd*, 321 N.C. at 327, 364 S.E.2d at 332. Accordingly, we conclude that the sentence of death entered in the present case is not disproportionate.

Having considered and rejected all of the defendant's assigned errors, we hold that the defendant's trial was free of prejudicial error and that the sentence of death entered against him must be and is left undisturbed.

No error.