STATE OF NORTH CAROLINA v. VINCENT MONTE WOOTEN

No. 208A94

(Filed 6 September 1996)

1. **Criminal Law § 1348 (NCI4th)— capital murder—prospective jurors—instructions in outline of law—mitigating circumstances**

The trial court did not err in a capital first-degree murder prosecution by preliminarily instructing potential jurors in a summary of trial procedures and capital punishment that mitigating circumstances were "things that might tend to mitigate the offense." The jury considered twenty-two different mitigating circumstances, including the catchall provision, and the trial court instructed the jury that it should consider as mitigating circumstances any aspect of defendant's character or record, any circumstances of the murder, and any other circumstances arising from the evidence which it deemed to have mitigating value. There is no reason to believe that the jury failed to consider any mitigating evidence as a result of the trial court's definition.

**Am Jur 2d, Criminal Law §§ 598-600, 912; Trial § 841.**

**Instructions to jury: Sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

STATE v. WOOTEN

[344 N.C. 316 (1996)]

## 2. Criminal Law § 1326 (NCI4th)— capital murder—prospective jurors—outline of law—finding necessary for death penalty

The trial court did not err in a capital first-degree murder prosecution in a four page summary of trial procedures and capital punishment given to prospective jurors where defendant argued that the court confused venire members by omitting the requirement that the jury consider defendant's mitigating evidence during the capital sentencing proceeding, thereby prejudicing defendant by misrepresenting the State's burdens of production and persuasion. The trial court properly instructed the jury on the three findings necessary to support the imposition of the death penalty—existence of any aggravating circumstances, substantiality of those aggravators, and failure of the mitigators to outweigh the aggravators.

**Am Jur 2d, Trial §§ 841, 1440-1449.**

## 3. Criminal Law § 1319 (NCI4th)— capital murder—instructions to prospective jurors—outline of law

The trial court did not err in a capital first-degree murder prosecution in a four page summary of trial procedures and capital punishment given to prospective jurors where defendant argued that the instructions misstated the law by conveying to prospective jurors that they could not be opposed to the death penalty and at the same time be able to recommend the death sentence based on the evidence and the law, erroneously informed prospective jurors that they could not serve if they had any inclination to favor one punishment over another, and improperly focused the jury on sentencing. A trial court's instructions to the jury are to be construed contextually and isolated passages will not be deemed prejudicial when the charge as a whole is correct. Here the trial court's instructions were designed to inform members of the venire that both sides were looking for fair and impartial jurors who would follow the law by voting for punishment based upon the evidence. At least ten jurors were excused for cause after stating that their beliefs were so strong that they would be unable to follow the law, but no jurors expressing views against capital punishment but stating that they could follow the law were excused for cause. The instructions did not have the effect of prejudicing defendant's right to a fair and impartial jury.

**Am Jur 2d, Trial §§ 1441-1449.**

**4. Jury § 145 (NCI4th)— capital murder—prospective jurors—outline of law—capital sentencing**

The trial court did not err in a first-degree murder prosecution in giving prospective jurors a four-page "Outline of the Law" where defendant argued that the outline dealt "exclusively" with capital sentencing with respect to a verdict for first-degree murder and that the instructions improperly emphasized sentencing. This outline included a substantial amount of information with respect to the guilt phase of the trial, including the relevant law on the presumption of innocence and the State's burden of proof. Furthermore, the court made it clear that the first duty of the jury was to determine defendant's guilt or innocence and that the discussion of sentencing issues was simply to help the jurors understand the jury selection process. The instructions about capital sentencing originated with the trial court in the interest of securing a fair and impartial jury; the court was merely acting to expedite the trial and did not err on these facts.

**Am Jur 2d, Trial §§ 1441-1449.**

**5. Jury § 153 (NCI4th)— capital murder—jury selection— qualms about death penalty—question not improper**

The trial court did not err in a capital first-degree murder prosecution by allowing the prosecutor to ask during *voir dire* whether prospective jurors could write the word "death" and sign their names on the sentence recommendation form if chosen as a foreperson and the State proved the case beyond a reasonable doubt where the prosecutor subsequently peremptorily challenged jurors expressing hesitancy about returning a death sentence. Although defendant contended that these questions were not relevant under *Witherspoon* to the determination of a juror's fitness to serve and that the prosecutor's peremptory challenges went beyond *Witherspoon*, it has been held that it is not error for the prosecution to use peremptory challenges to excuse jury pool members who have qualms about the death penalty but who would not be excludable under *Witherspoon*.

**Am Jur 2d, Homicide §§ 513, 514, 522-524; Trial §§ 1118-1120, 1441.**

STATE v. WOOTEN

[344 N.C. 316 (1996)]

**6. Jury § 103 (NCI4th)— capital murder—jury selection— individual voir dire and sequestration—denied**

The trial court did not err in a capital first-degree murder prosecution by denying defendant's motion for individual *voir dire* and sequestration of prospective jurors. The North Carolina Supreme Court has consistently denied relief on this basis and defendant has offered no convincing reason explaining how the denial of his motion may have harmed him.

**Am Jur 2d, Jury §§ 189-199, 204, 210.**

**Right of counsel in criminal case personally to conduct the voir dire examination of prospective jurors. 73 ALR2d 1187.**

**7. Constitutional Law § 353 (NCI4th)— capital murder— defense witness—assertion of privilege against self-incrimination**

There was no error in a capital murder prosecution in the trial court's denial of defendant's request to examine a defense witness on *voir dire* to ascertain whether he would invoke the privilege against self-incrimination. While defendant objected at trial to the witness's assertion of the privilege against self-incrimination in the presence of the jury, defendant raised for the first time on appeal the issue of the trial court's denial of his motion to question the witness on *voir dire*.

**Am Jur 2d, Criminal Law §§ 701 et seq., 936 et seq.; Witnesses §§ 172-174.**

**8. Criminal Law § 682 (NCI4th)— capital murder—mitigating circumstances—mental and emotional disturbance— peremptory instructions denied**

The trial court did not err in a capital sentencing proceeding by not giving a peremptory instruction on the statutory mitigating circumstance of mental and emotional disturbance, N.C.G.S. § 15A-2000(f)(2), where there was substantial evidence indicating that defendant became very angry and threatened to kill the victim upon learning that $250,000 worth of drugs and cash had been taken from him. The jury could find from the evidence that defendant's feelings of anger were not those of a disturbed individual, but the common reaction of

one who has just had a great deal of money and property taken from him.

**Am Jur 2d, Criminal Law § 598.**

**9. Criminal Law § 681 (NCI4th)— capital murder—mitigating circumstances—impaired capacity—peremptory instruction denied**

The trial court did not err in a capital sentencing proceeding by not giving a peremptory instruction on the statutory mitigating circumstance of impaired capacity, N.C.G.S. § 15A-2000(f)(6), where there was substantial evidence that defendant's mental state was not such that his capacity to understand the events as they took place and to conform his conduct to the directives of the law was impaired. Defendant immediately investigated the theft of his drugs and money by going to the scene of the theft, interrogating potential witnesses, and searching the country for suspects; conceived a plan to evade capture in driving to another town, buying new clothes, and having one of his two girlfriends meet him and hide the weapons; and his mental ability was sufficient for him to have renewed his driver's license in 1992 and scored ninety-two out of one hundred on the written test.

**Am Jur 2d, Criminal Law § 598.**

**10. Criminal Law § 680 (NCI4th)— capital murder—mitigating circumstances—age of defendant—peremptory instruction denied**

There was no plain error in a capital murder prosecution in the court's failure to give a peremptory instruction on the statutory mitigating circumstance of defendant's age. While defendant argues that the evidence as to the mitigating nature of his age (20) was uncontroverted, evidence at trial tended to show that defendant had previous criminal convictions and had served time in prison; that defendant was the kingpin of an elaborate drug syndicate with several "employees"; and that defendant provided for his mother, brother, and his girlfriend's family with the earnings from the drug operation. N.C.G.S. § 15A-2000(f)(7).

**Am Jur 2d, Criminal Law §§ 598, 603.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

**11. Criminal Law § 1362 (NCI4th)— capital murder—sentencing—mitigating circumstance of age—instructions**

The trial court did not err in a capital sentencing proceeding in its instruction on the mitigating circumstance of age where the court gave an instruction consistent with the pattern jury instruction which said that the mitigating effect of defendant's age is for the jury to determine from all the facts and circumstances. It was held in *State v. Skipper*, 337 N.C. 1, that the requirement is that the jury may not refuse to consider any relevant mitigating evidence and that the language "mitigating effect" did not allow the jury to refuse to consider evidence about age as a mitigating circumstance.

**Am Jur 2d, Criminal Law § 598.**

**12. Criminal Law § 1348 (NCI4th)—capital sentencing—instructions—sympathy**

The trial court did not err in a capital sentencing hearing by rejecting defendant's request that the jurors be instructed that they could base their recommendation upon any sympathy or mercy they may have for defendant arising from the evidence. It was held *State v. Hill*, 331 N.C. 387, that the better course is to avoid mentioning sympathy in instructions concerning mitigating circumstances in capital sentencing proceedings.

**Am Jur 2d, Criminal Law §§ 598-600.**

**13. Criminal Law § 1312 (NCI4th)— capital murder—sentencing—proof of prior conviction—testimony of court clerk**

The trial court did not abuse its discretion in a capital sentencing proceeding by admitting the testimony of a court clerk with respect to information in an indictment concerning a prior conviction of defendant. The State may present any competent evidence with respect to defendant's character or record that will substantially support the imposition of capital punishment and is not precluded from methods of proof of a prior conviction other than stipulation or original certified court record; however, the court may exercise discretion to ensure that the proof of aggravating circumstances does not become a mini-trial of the previous charges. Here, the jury was clearly cognizant of defendant's having pled guilty to an assault due to an admission on cross-examination and the victim's name and type of firearm was relevant, competent evidence properly ad-

STATE v. WOOTEN

[344 N.C. 316 (1996)]

mitted. The trial court prevented a mini-trial of the previous charge.

**Am Jur 2d, Evidence §§ 327-329.**

**14. Criminal Law § 1348 (NCI4th)— capital murder—sentencing—instructions—definition of mitigating circumstances**

The trial court did not err in a capital sentencing proceeding by giving a definition of mitigation drawn directly from the relevant pattern jury instruction.

**Am Jur 2d, Criminal Law § 596.**

**15. Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A death sentence was not disproportionate where the record fully supports the aggravating circumstance found by the jury, there is no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration, and the case is more similar to cases where the death sentence was found proportionate than to those in which the death penalty was found to be disproportionate or those in which juries have consistently recommended life imprisonment. Defendant spent the day at issue implementing a plan by interrogating suspects, patrolling the neighborhood and surrounding areas, and ambushing the victim and murdering him with an illegal machine gun. Defendant's televised exhibition of the technique by which he murdered the victim was a cavalier demonstration of his callousness and obliviousness to the value of human life.

**Am Jur 2d, Criminal Law § 628.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27 from a judgment imposing a sentence of death entered by Griffin, J., on 28 April 1994, in Superior Court, Pitt County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 12 March 1996.

STATE v. WOOTEN

[344 N.C. 316 (1996)]

*Michael F. Easley, Attorney General, by Michael S. Fox, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, and J. Michael Smith, Assistant Appellate Defender, for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was tried capitally upon an indictment charging him with first-degree murder in the killing of Edward Maurice Wilson. The jury returned a verdict finding defendant guilty of first-degree murder on the theories of premeditation and deliberation and lying in wait. Following a separate capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death for the murder, and the trial court entered a death sentence in accord with that recommendation. Defendant appeals to this Court as a matter of right from the judgment and sentence of death imposed for first-degree murder. For the reasons set forth in this opinion, we conclude that defendant received a fair trial, free from prejudicial error, and that the sentence of death for first-degree murder in this case is not disproportionate.

Evidence presented at trial tended to show that on 9 February 1993, defendant found out that someone had broken into the home of Dorothy Taft, defendant's girlfriend's mother, and stolen a number of items, including defendant's safe. The safe contained about $13,000 in cash and around 500 grams of cocaine. Defendant kept the safe in Dorothy's house because his mother would not allow him to keep it at home. Defendant was very upset about the theft and went out with Calvin Gardner (defendant's half-brother) and Eric Wooten (defendant's cousin) to investigate the matter.

Upon arriving at Dorothy's house, defendant argued about the theft with Stacy Taft (Dorothy Taft's son) and Edward Wilson, the victim in this case. Defendant told Wilson that he would kill him if he had anything to do with the theft of the safe. Defendant knew Wilson from Wilson's previous involvement in defendant's drug dealing activities. Although defendant, Gardner, and Wooten left the area shortly thereafter, they were in the Tafts' neighborhood several other times throughout the evening, once coming to argue again with Stacy about the safe. They returned to Dorothy's house later that evening after seeing Wilson going in the direction of the house.

Defendant and the others followed Wilson to the house and pulled up behind Wilson in the driveway. As Wilson walked toward defendant's car, defendant got out and shot Wilson several times with a .223 Colt AR-15 semiautomatic rifle that had been illegally modified so that it would fire automatically.

Defendant was arrested later that evening. While defendant did not want to speak with police investigators about the incident, he did tell them that "I love to shoot people." He later told a television reporter on camera that "I shot [the victim] down," demonstrated how he shot the victim, and said that he had no remorse about the killing. Defendant subsequently testified that he did not commit the killing and that he made the statements to the television reporter because he felt responsible for the victim's death and because he wanted to clear the names of his brother and cousin.

Dr. M.G.F. Gilliland, the Pitt County Medical Examiner, testified that Wilson suffered four gunshot wounds to the head, including two to the cheek, one above the temple, and one above the ear. All of the wounds passed from front to back, and the bullets exited near the back of Wilson's head. Dr. Gilliland testified that there was extensive damage to the brain and skull and that all four of the wounds were fatal.

In his first assignment of error, defendant contends that the trial court erred in distributing a document to prospective jurors entitled "Outline of Legal Principles." Defendant argues that the outline, a four-page summary dealing with the trial procedures and law with respect to capital punishment, misrepresented the capital punishment law. He contends that because it was given to potential jurors before the jury was selected, the document suggested that defendant would be found guilty and that a death penalty proceeding would therefore be necessary. Defendant takes issue with three aspects of the outline and the instructions that accompanied it: (1) the trial court's erroneous definition of mitigating circumstances; (2) the emphasis on the State's burden of production and persuasion, thereby confusing potential jurors; and (3) the overemphasis of the capital sentencing proceeding, thereby predisposing the jurors toward the death penalty. We address each of these issues.

[1] The trial court preliminarily instructed the potential jurors that mitigating circumstances were "things that might tend to mitigate the offense." Defendant contends that this instruction violated *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), by precluding the prospec-

tive jurors from considering any aspect of his background, his character, and the circumstances surrounding the crime that might form the basis for a sentence other than death. While *Lockett* involved an Ohio statute that specifically limited the sentencing body to the consideration of only three mitigators, N.C.G.S. § 15A-2000(f) allows the jury to consider eight specific statutory mitigating circumstances, a "catchall" statutory circumstance, and any number of nonstatutory mitigators for which there is substantial evidence.

In this case, the jury considered twenty-two different mitigating circumstances, including the catchall provision, and the trial court instructed the jury that

> [o]ur law identifies several possible mitigating circumstances. However, . . . it would be your duty to consider as mitigating circumstance [sic], any aspect of the defendant's character or record and any of the circumstances of this murder that the defendant contends is a basis for a sentence less than death, and any other circumstance arising from the evidence which you deem to have mitigating value.

There is no reason to believe that the jury failed to consider any mitigating evidence as a result of the trial court's definition of mitigating circumstances, and this contention is therefore without merit.

[2] Defendant further argues in support of this assignment of error that the trial court's *voir dire* instructions confused the venire members by omitting the requirement that the jury consider defendant's mitigating evidence during the capital sentencing proceeding, thereby prejudicing defendant by misrepresenting the State's burdens of production and persuasion. Defendant contends that this error allowed the jurors to ignore mitigating evidence throughout the guilt phase of the trial.

The trial court instructed the jury that

> [t]he law further provides that it is the duty of the jury to recommend that the defendant be sentenced to death if the State satisfies 12 jurors beyond a reasonable doubt of three things:

> First, that one or more of the aggravating circumstances prescribed in this statute, in the law, exists.

> Second, that the aggravating circumstances are sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating [circumstances] found by the jury

or any juror. The reason for that, putting it that way, is that the mitigating [circumstances] do not have to be found unanimously. Any one juror can find a mitigating [circumstance].

> And third, that any mitigating circumstances found to exist are insufficient to outweigh the aggravating circumstance or circumstances found. So the jury is called upon to engage in this process that I've just described.

This instruction is a correct statement of the law. In *State v. Holden*, 321 N.C. 125, 160, 362 S.E.2d 513, 535 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988), this Court held that an instruction enumerating the three findings necessary to support the imposition of the death penalty—existence of any aggravating circumstances, substantiality of those aggravators, and the failure of the mitigators to outweigh the aggravators—was proper. The trial court so instructed the jury here and therefore did not err. This argument is without merit.

[3] Defendant's next argument under this assignment of error involves the trial court's instructions with respect to juror qualifications under *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968). He argues that the trial court's instructions (1) misstated the law by conveying to prospective jurors that they could not be opposed to the death penalty and at the same time be able to recommend the death sentence based on the evidence and the law, (2) erroneously informed prospective jurors that they could not serve if they had any inclination to favor one punishment over another, and (3) improperly focused the jury on sentencing.

The United States Supreme Court ruled in *Witherspoon* that the State may exclude for cause only those jurors who would be unable to perform or would be substantially impaired in the performance of their duties as capital sentencing jurors, notwithstanding their personal, political, moral, or religious objections to the death penalty. *Id.* at 522, 20 L. Ed. 2d at 784-85. The trial court instructed the jury in this case in the following manner:

> [W]e're looking for jurors who can fairly weigh this manner without any predisposition with regard to sentence, that is, no predisposition toward the death penalty, no predisposition towards life imprisonment[,] who can, on the evidence, in following the principles and the instructions that the Court will give you, fairly weigh the aggravating and mitigating circumstances as I'll explain

to you at an appropriate time and deciding the matter of punishment fairly and without any predisposition either way, and base a decision on the evidence and the law. . . .

If you're selected to serve as a juror in this case, can and will you follow the law as it will be explained to you by the Court in deciding whether the defendant[] is guilty or not guilty of first-degree murder or any lesser offense? . . .

Second, if you are satisfied beyond a reasonable doubt of those things necessary to constitute first-degree murder, can and will you vote to return a verdict of first-degree murder even though you know that death is one of the possible penalties?

Considering the next question they would be asking you or considering your personal beliefs about the death penalty, tell us whether you would be able or unable to vote to recommend the death penalty even though you are satisfied beyond a reasonable doubt of the three things required by law concerning the aggravating and mitigating circumstances that have been previously mentioned[.]

Another way to say it, to ask this question is: Are you opposed to the death penalty, completely and unequivocally opposed to the death penalty . . . .

Another way to frame that question you'd be asked whether you would automatically vote to impose the death penalty. And again this is designed to get at those people who feel that it—they would not be able to weigh or impose a life sentence if the evidence and the law warranted that result.

Can you consider the death penalty based on the evidence and the law is another way to put that question.

You will be asked considering your personal belief about the death penalty, tell us—or state whether you would be able or unable to vote for a recommendation of life imprisonment if the State fails to satisfy you beyond a reasonable doubt of the three things required by law concerning the aggravating and mitigating circumstances previously mentioned. Would you be able to consider life imprisonment based on the evidence and the law, in other words?

You would be asked would you automatically vote to impose life imprisonment? And again, the effort is to find jurors who can

fairly weigh the matter without any predisposition toward either—any result in this case.

If the defendant is convicted of first-degree murder, can and will you follow the law of North Carolina and the instructions that I will give you regarding this sentencing phase that I will ultimately explain to you? Really, it boils down to one question of whether or not you can do all of these things that we've talked about.

We have consistently held that a trial court's instructions to the jury are to be construed contextually and that isolated passages from those instructions will not be deemed prejudicial when the charge as a whole is correct. *State v. Jones*, 342 N.C. 523, 541, 467 S.E.2d 12, 23 (1996). In this case, the trial court's instructions were designed to inform members of the venire that both sides were looking for fair and impartial jurors who would follow the law by voting for punishment based upon the evidence. The instructions did not have the effect of prejudicing defendant's right to a fair and impartial jury. At least ten jurors were excused for cause pursuant to *Witherspoon* after stating that their beliefs were so strong that they would be unable to follow the law. However, no juror expressing views against capital punishment but stating that the juror could follow the law was excused for cause. This argument is without merit.

[4] Defendant further argues that the outline dealt "exclusively" with capital sentencing law with respect to a verdict for first-degree murder and that the instructions accompanying the outline improperly emphasized sentencing. The outline read as follows:

The Defendant, VINCENT MONTE WOOTEN, is charged with First Degree Murder of one Edward Maurice [Wilson] on February 9, 1993, and has entered a plea of not guilty of this charge.

Under the law of North Carolina, the Jury must first decide whether the Defendant is guilty or not guilty of First Degree Murder.

· If the Jury finds the Defendant guilty, it must then, after a second hearing, decide to recommend whether a sentence of life imprisonment or death should be imposed by the Court.

Do you understand this to be the law?

Answer: _____

**STATE v. WOOTEN**

[344 N.C. 316 (1996)]

During the first stage of the trial, the Court will, at an appropriate time, instruct the Jury as to the elements of First Degree Murder and any lesser offenses which may be considered by the Jury under the law and the evidence.

In reaching its verdict as to whether the Defendant is guilty or not guilty, it is the sworn duty of each juror to fairly and impartially weigh and consider the evidence and to follow these basic principles of law.

First, the fact that the Defendant has been charged with an offense is not evidence of guilt.

Second, the Defendant is presumed to be innocent.

Third, the State has the burden to satisfy all twelve jurors beyond a reasonable doubt that the Defendant is guilty of an offense.

And Fourth, if the State does satisfy beyond a reasonable doubt of the existence of those facts necessary under the law, then it would be your duty as a juror to vote for a verdict of guilty. If it fails to do so, it would be your duty to find the defendant not guilty.

Do you understand this to be the law?

Answer: _____

If you are selected as a juror in this case, can and will you follow this law?

Answer: _____

The law further provides that it is the duty of the Jury to recommend that the Defendant be sentenced to death if the State satisfied the twelve jurors beyond a reasonable doubt of three things:

First, that one or more of the aggravating circumstances prescribed by Statute exists.

Second, that the aggravating circumstances are sufficiently substantial to call for the imposition of the death penalty when considered with any of the mitigating [circumstances] found by the Jury or any juror.

And Third, that any mitigating circumstances found to exist are insufficient to outweigh the aggravating circumstances found.

Do you understand this?

Answer: _____

If the State fails to satisfy the Jury of all of these three things, it is the duty of the Jury to recommend life imprisonment.

Do you understand this?

Answer: _____

Please listen carefully to these questions that I'm going to ask you and consider them before answering.

If you are selected to serve as a juror in this case, can and will you follow the law as it will be explained to you by the Court in deciding whether the Defendant is guilty or not guilty of First Degree Murder or of any other lesser offense?

Answer: _____

Second, if you are satisfied beyond a reasonable doubt of those things necessary to constitute First Degree Murder, can and will you vote to return a verdict of guilty of First Degree Murder even though you know that death is one of the possible penalties?

Answer: _____

Considering your personal beliefs about the death penalty, state whether you would be able or unable to vote for a recommendation of the death penalty even though you are satisfied beyond a reasonable doubt of the three things required by law concerning the aggravating and mitigating circumstances previously mentioned?

Answer: _____

Would you automatically vote to impose the death penalty?

Answer: _____

Considering your personal belief about the death penalty, state whether you would be able or unable to vote for a recommendation of life imprisonment if the State fails to satisfy you beyond a reasonable doubt of the three things required by law

STATE v. WOOTEN

[344 N.C. 316 (1996)]

concerning the aggravating and mitigating circumstances previously mentioned?

Answer: _____

Would you be able to consider life imprisonment?

Answer: _____

If the Defendant is convicted of First Degree Murder, can and will you follow the law of North Carolina as to the sentence recommendation to be made by the Jury as the Court will explain it?

Answer: _____

We have warned that special instructions or synopsized "outlines" of the law

> might be fruitless, as the sentencing jury is not always composed of the same individuals as the guilt-phase jury; it might be distracting, as the function of the jury during the guilt phase is to determine the guilt or innocence of the defendant, not to be concerned about his penalty; and it could have a prejudicial effect, suggesting to the jury that the second stage in the trial will assuredly be reached, presupposing defendant's guilt.

*State v. Artis*, 325 N.C. 278, 295, 384 S.E.2d 470, 479 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). However, the outline at issue here obviously includes a substantial amount of information with respect to the guilt phase of the trial, including the relevant law on the presumption of innocence and the State's burden of proof. Furthermore, the trial court made it clear that the first duty of the jury was to determine defendant's guilt or innocence and that the discussion of sentencing issues was simply to help the jurors understand the jury selection process. Thus, the trial court instructed that

> in this particular case, it's a two stage process. Theoretically, we may select a jury here that would determine only whether the defendant is guilty or not guilty of first-degree murder or some lesser offense. And conceivably at a later time, we could have a second jury to undertake . . . the issue of punishment.

> Ordinarily, the course of things is that the jury that would be selected here would come to consider at some point, if we reach that point, if the jury finds the defendant is not guilty, of course, or some lesser offense, then we wouldn't reach the question of

punishment. The jury wouldn't have to be concerned about it. But in selection of the jury, we need to consider the matter as if we would reach that point. But keep in mind this is done simply as a matter of informing you what the procedure is.

Defendant has failed to show that the trial court abused its discretion through these instructions and through the distribution of the outline.

Defendant argues that the outline violates this Court's holdings in *State v. Jones*, 339 N.C. 114, 451 S.E.2d 826 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 873 (1995); *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995); *State v. Brown*, 327 N.C. 1, 394 S.E.2d 434 (1990); and *Artis*, 325 N.C. 278, 384 S.E.2d 470. We held in those cases that it was not an abuse of discretion for the trial court to refuse to give a *defendant's* request for special instructions with respect to capital sentencing procedures. In this case, however, the instructions about capital sentencing originated with the trial court in the interest of securing a fair and impartial jury. The trial court was merely acting in accordance with this Court's statement in *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980), that "the duty of the [trial] judge [is] to expedite the trial in every appropriate way." The trial court did not err on these facts by providing the venire members with an accurate synopsis of the law and streamlining the preliminary *voir dire* through a series of questions. This assignment of error is overruled.

[5] In another assignment of error, defendant argues that the trial court erred in allowing the prosecutor to ask impermissible questions during *voir dire* and that the prosecutor's subsequent peremptory challenges to jurors expressing hesitancy about returning a death sentence violated defendant's rights to be tried by an impartial jury. During the *voir dire*, the prosecutor asked prospective jurors whether they could write the word "death" and sign their names on the sentence recommendation form if chosen as foreperson and the State proved the case beyond a reasonable doubt. Defendant contends these questions were not relevant under *Witherspoon* to the determination of a juror's fitness to serve.

In *State v. Green*, 336 N.C. 142, 443 S.E.2d 14, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994), this Court rejected a similar argument, stating that the "test for determining whether a prospective juror may be properly excused for cause for his views on the death penalty is whether those views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his

instructions and his oath.' " *Id.* at 158-59, 443 S.E.2d at 24 (quoting *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985)). While defendant contends that the prosecutor's peremptory challenges went beyond *Witherspoon*, we held in *State v. Allen*, 323 N.C. 208, 221-22, 372 S.E.2d 855, 863 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), that it is not error for the prosecution to use peremptory challenges to excuse jury pool members who have qualms about the death penalty but who would not be excludable under *Witherspoon*. This assignment of error is without merit.

**[6]** Defendant contends in another assignment of error that the trial court erred in denying his motion for individual *voir dire* and sequestration of prospective jurors. Defendant concedes that we have consistently denied relief on this basis. *See, e.g., State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987); *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1985). As defendant has offered no convincing reason explaining how the denial of his motion may have harmed him, we need not revisit this issue. This assignment of error is without merit.

**[7]** Defendant next assigns error to the trial court's denial of his request to examine defense witness Calvin Gardner on *voir dire* to ascertain whether Gardner would invoke the privilege against self-incrimination. Gardner was with defendant and Eric Wooten at the time the victim was killed. Defendant's attorneys argued that it would be prejudicial to defendant if Gardner invoked his rights against self-incrimination in the presence of the jury. Gardner's attorneys informed the trial court that they had advised Gardner not to testify. After the trial court denied defendant's motion for *voir dire*, Gardner took the stand and refused to testify. While defendant objected at trial to Gardner's assertion of the privilege against self-incrimination in the presence of the jury, defendant raises for the first time on appeal the issue of the trial court's denial of his motion to question Gardner on *voir dire*.

In *State v. Maynard*, 311 N.C. 1, 316 S.E.2d 197, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984), this Court examined the issue whether a trial court, on its own motion, is required to conduct *voir dire* "to determine if there is a basis for a witness's fifth amendment claim when (1) that witness was presented by the defense and (2) the defendant failed to object at trial to the witness's assertion of the fifth amendment right." *Id.* at 12, 316 S.E.2d at 203. We held in *Maynard* that the trial court had no duty to conduct on its own motion a *voir*

*dire* to determine if there was a valid basis for a defense witness's Fifth Amendment claim. *Id.* at 14, 316 S.E.2d at 204. While defendant in this case requested that Gardner be examined, the only purpose of this request was to determine whether Gardner would assert his Fifth Amendment privilege. The sole concern defense counsel expressed at trial was that Gardner's invocation of the privilege before the jury would prejudice defendant. As in *Maynard*, defendant never objected to the witness's assertion of the privilege, nor did he ask the trial court to examine the witness as to the basis of his invocation of the privilege. Therefore, this assignment of error is without merit.

[8] Defendant contends in his next assignment of error that the trial court erred in failing to give peremptory instructions on the statutory mitigating circumstances involving defendant's mental condition. Defendant requested peremptory instructions on the statutory mitigators for mental and emotional disturbance (N.C.G.S. § 15A-2000(f)(2) (Supp. 1995)) and impaired capacity (N.C.G.S. § 15A-2000(f)(6) (Supp. 1995)). Evidence was introduced tending to show that defendant's IQ was such that it would make it difficult for him to deal with most activities of daily living, such as health, personal care, and remembering his responsibilities. Furthermore, evidence tended to show that he had chronic brain syndrome, a condition that would affect his ability to deal with emotions and feelings, thereby impairing his ability to conform his conduct to the dictates of the law. Defendant argues that this evidence entitled him to peremptory instructions as to the (f)(2) and (f)(6) mitigators.

A peremptory instruction is proper only when all the evidence, if believed, tends to show that a particular mitigating circumstance exists. *State v. Gay*, 334 N.C. 467, 492, 434 S.E.2d 840, 854 (1993). With respect to the (f)(2) mitigator, there was substantial evidence indicating that defendant did not suffer from a mental or emotional disturbance at the time of the murder. Evidence tended to show that upon learning that $250,000 worth of drugs and cash had been taken from him, defendant became very angry and threatened to kill the victim if he had anything to do with the theft. In *State v. Noland*, 312 N.C. 1, 320 S.E.2d 642 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985), we distinguished mental disturbance from mere anger and ruled that, where the events show that the killing was the product of deliberation rather than the "frenzied behavior of an emotionally disturbed person," a peremptory instruction is improper. *Id.* at 23, 320 S.E.2d at 656. In this case, the jury could find from the evidence that defendant's feelings of anger were not those of a disturbed individual,

but were the rather common reaction of one who has just had a great deal of money and property taken from him. The trial court's refusal to give a peremptory instruction as to the (f)(2) mitigator was not improper.

**[9]** With respect to the (f)(6) mitigator, there was substantial evidence showing that defendant's mental state was not such that his capacity to understand the events as they took place and to conform his conduct to the directives of the law was impaired. For example, defendant immediately investigated the theft of his drugs and money by going to the scene of the theft, interrogating potential witnesses, and searching the county for suspects. Furthermore, defendant conceived a plan to evade capture in driving to another town, buying new clothes, and having one of his two girlfriends meet him and hide the weapons. Defendant's mental ability was sufficient for him to have renewed his driver's license in 1992 and scored ninety-two out of one hundred on the written test. This evidence was inconsistent with the (f)(6) mitigator. As the trial court did not err in refusing to issue peremptory instructions with respect to the (f)(2) and (f)(6) mitigators, this assignment of error is without merit.

**[10]** Defendant next contends that the trial court erred in failing to give a peremptory instruction on the statutory mitigating circumstance of his age (N.C.G.S. § 15A-2000(f)(7)) and by giving instead an instruction that allowed jurors to reject the mitigator by finding that defendant's youth and immaturity had no mitigating value.

We have said with respect to the (f)(7) circumstance that " '[a]ny hard and fast rule as to age would tend to defeat the ends of justice, so the term youth must be considered as relative and this [circumstance] weighed in the light of varying conditions.' " *State v. Oliver*, 309 N.C. 326, 372, 307 S.E.2d 304, 333 (1983) (quoting *Giles v. State*, 261 Ark. 413, 421, 549 S.W.2d 479, 483, *cert. denied*, 434 U.S. 894, 54 L. Ed. 2d 180 (1977)). Therefore, there is no definitive chronological age at which a trial court should decline as a matter of law to submit the statutory age mitigator. *Cf. id.* ("[T]he chronological age of the defendant is not the determinative factor under G.S. § 15A-2000(f)(7)."). While defendant did request a peremptory instruction in this case with respect to his age, he did not object to the pattern jury instruction as it was given at the close of the capital sentencing proceeding. As defendant did not object to this instruction, plain error analysis applies. *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993).

Defendant argues that as there was evidence tending to show that he was twenty years old at the time of the murder and lacked the emotional and cognitive functioning necessary to lead a normal life, he was entitled to such a peremptory instruction. In *State v. Simpson*, 341 N.C. 316, 462 S.E.2d 191 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 194 (1996), we held that "[w]here defendant's age is requested as a mitigating circumstance and is submitted to the jury, it is the province of the jury, upon evaluation in light of all other facts and circumstances found from the evidence, to determine whether defendant's age should be 'found' as a circumstance of mitigating value." *Id.* at 346-47, 462 S.E.2d at 208. While defendant argues that the evidence as to the mitigating nature of his age was uncontroverted, he overlooks certain evidence presented at trial. Evidence at trial tended to show that defendant had previous criminal convictions and had served time in prison; that defendant was the kingpin of an elaborate drug syndicate with several "employees"; and that defendant provided for his mother, brother, and his girlfriend's family with the earnings from the drug operation. We cannot say that the trial court's failure to offer the peremptory instruction was plain error.

[11] Defendant further argues that the instruction on age actually given by the trial court was erroneous. The trial court offered the following instruction, consistent with the pattern jury instruction, to the jury: "Third, you must consider whether the age of the defendant at the time of this murder, is a mitigating [circumstance]. The mitigating effect of the age of the defendant is for you to determine from all the facts and circumstances which you find from the evidence." Defendant argues that this language violates *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1 (1982), by allowing jurors to find the mitigator but to give it no weight. We rejected such an argument in *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252, stating that

> [t]he only requirement is that the jury may not "refuse to consider, as a matter of law, any relevant mitigating evidence." *Eddings v. Oklahoma*, 455 U.S. at 114, 71 L. Ed. 2d at 11. . . . We conclude that, in this case, the language "mitigating effect" did not allow the jury to "refuse to consider, as a matter of law," the evidence about age as a mitigating circumstance.

*Skipper*, 337 N.C. at 46-47, 446 S.E.2d at 277. Therefore, this assignment of error is without merit.

[12] Defendant contends in his next assignment of error that the trial court erred in rejecting his request that the jurors be instructed that

they could "base their recommendation upon any sympathy or mercy you may have for the defendant that arises from the evidence presented in this case." Defendant cites *California v. Brown*, 479 U.S. 538, 93 L. Ed. 2d 934 (1987), in support of this assignment of error. We encountered an instruction identical to the one in this case in *State v. Hill*, 331 N.C. 387, 417 S.E.2d 765 (1992), *cert. denied*, 507 U.S. 924, 122 L. Ed. 2d 684 (1993). We held in *Hill* that the trial court properly rejected the proposed instruction, as "the better and constitutionally safer course for trial courts is to avoid mentioning sympathy in instructions concerning mitigating circumstances in capital sentencing proceedings." *Id.* at 421, 417 S.E.2d at 782. This assignment of error is therefore without merit.

[13] In another assignment of error, defendant contends that the trial court erred in the capital sentencing proceeding by admitting the testimony of a court clerk with respect to information in an indictment concerning a prior conviction of defendant. During the State's presentation of evidence, defendant objected to the clerk's testimony with respect to defendant's prior conviction for assault with a deadly weapon inflicting serious injury. This testimony included the name of the victim and the fact that defendant shot the victim with a shotgun. Defendant argues that the testimony of the clerk was not competent evidence and that the trial court abused its discretion in overruling defendant's objections to this testimony.

This Court held in *State v. Cummings*, 323 N.C. 181, 372 S.E.2d 541 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 602 (1990), that the State may present any competent evidence with respect to defendant's character or record that will substantially support the imposition of capital punishment. Furthermore, while a prior conviction may be proved by stipulation or original certified copy of the court record, the State is not precluded from other methods of proof. *Id.* at 193, 372 S.E.2d at 549-50. However, the trial court may exercise discretion in controlling the State's presentation of the evidence to ensure that the proof of aggravating circumstances does not become a "mini-trial" of the previous charge or charges. *Jones*, 339 N.C. at 151, 451 S.E.2d at 845 (1994). A trial court may be reversed for abuse of discretion only upon the showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision. *State v. Kandies*, 342 N.C. 419, 446, 467 S.E.2d 67, 82 (1996).

In the present case, the trial court properly exercised its discretion in allowing the clerk to testify with respect to the assault con-

viction. The jury was clearly cognizant of defendant's having pleaded guilty to the assault due to his own admission to that effect on cross-examination. Furthermore, the trial court prevented a mini-trial of the previous charge. The victim's name and the type of firearm used was relevant, competent evidence properly admitted by the trial court. While defendant cites N.C.G.S. § 15A-1340.4(e) for the proposition that prior convictions may be proved only by certified copy of judgment or by stipulation of the parties, we held in *State v. Graham*, 309 N.C. 587, 593, 308 S.E.2d 311, 316 (1983), that those methods of proof are not exclusive and that prior convictions may be shown by other means as well. This assignment of error is without merit.

[14] Defendant next assigns error to the trial court's instructions to the jury with respect to mitigation, arguing that the trial court's definition of mitigation unfairly limited the range of evidence that a juror might find to be a basis for a sentence less than death. The trial court instructed the jury that a mitigating circumstance is a fact or group of facts that do not constitute a justification or excuse for a killing or reduce it to a lesser crime than first-degree murder, but that may be considered as extenuating or reducing the moral culpability of the killing or make it less deserving of extreme punishment than other first-degree murders. This instruction was drawn directly from the relevant pattern jury instruction. *See* N.C.P.I.—Crim. 150.10 (1990). It was not error. *Hill*, 331 N.C. at 420, 417 S.E.2d at 782. This assignment of error is without merit.

With commendable candor, defendant brings forward three additional assignments of error that he concedes have been previously decided contrary to his position by this Court. He raises these issues to give this Court the opportunity to reexamine its prior holdings, as well as to preserve these assignments of error for any potential further judicial review of this case. We have carefully considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. We therefore overrule these assignments of error.

[15] Having determined that defendant's trial and separate capital sentencing proceeding were free from error, we now turn to the duties reserved by N.C.G.S. § 15A-2000(d)(2) exclusively for this Court in capital cases. It is our duty in this regard to ascertain (1) whether the record supports the jury's findings of the aggravating circumstance on which the sentence of death was based; (2) whether the death sentence was entered under the influence of passion, prej-

udice, or other arbitrary consideration; and (3) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2). After thoroughly examining the record, transcripts, and briefs in the present case, we conclude that the record fully supports the aggravating circumstance found by the jury. Furthermore, we find no indication that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We therefore turn to our final statutory duty of proportionality review.

In the instant case, defendant was convicted of first-degree murder based on both the theory of premeditation and deliberation and the theory of lying in wait. The jury found as an aggravating circumstance that defendant had been previously convicted of a felony involving the use of violence to the person. N.C.G.S. § 15A-2000(e)(3) (1988). One or more jurors found the following circumstances to be mitigating: (1) defendant committed the murder while mentally or emotionally disturbed; (2) defendant was under the influence of marijuana at the time of the murder; (3) defendant was an illegitimate child whose father abandoned him financially and emotionally; (4) at age fifteen, defendant was shot by his stepfather Tim Harper; (5) defendant was physically abused by his stepfather Calvin Gardner, Sr.; (6) defendant was sexually abused by Gardner, Sr.; (7) during his childhood, defendant repeatedly witnessed his mother being beaten; (8) defendant's grandmother died in his arms when he was twelve years old; (9) defendant did not experience a stable childhood when he lived with his grandparents, aunt, and mother; (10) defendant was highly regarded by friends of the family, including the preacher at his church; (11) defendant possesses borderline intellectual functioning with an IQ of seventy-one; (12) defendant dropped out of school when he was in the ninth grade; (13) defendant has been diagnosed with chronic brain syndrome secondary to head trauma; (14) defendant experiences brain seizures as the result of a brain injury; and (15) defendant was brought up in an atmosphere of violence, abuse, and hate.

In our proportionality review, it is proper to compare the instant case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994). This Court has found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d

517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We do not find this case to be substantially similar to any of those cases.

In this case, defendant ambushed and shot down an unarmed victim with an illegal machine gun. The jury found the aggravating circumstance that defendant had previously been convicted of a felony involving the use of violence to the person. N.C.G.S. § 15A-2000(e)(3). This aggravator is one of three most commonly found in cases in which juries return death sentences. *State v. Greene*, 324 N.C. 1, 27-29, 376 S.E.2d 430, 446-47 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990).

In carrying out our proportionality review, we have noted the significance of a murder perpetrated by lying in wait for the victim. *See State v. Buckner*, 342 N.C. 198, 247, 464 S.E.2d 414, 442 (1995); *State v. Ward*, 338 N.C. 64, 128, 449 S.E.2d 709, 745 (1994), *cert. denied*, ⸺ U.S. ⸺, 131 L. Ed. 2d 1013 (1995); *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). In *Brown*, the defendant was convicted of first-degree murder on the theory of lying in wait, and the jury found the (e)(3) circumstance in the sentencing phase. We concluded that the death penalty as imposed in *Brown* was not disproportionate, stating:

> The crime was as calculated and deliberate as a murder can be. In the lengthy, purposeful plotting, and in the execution of his crime, the defendant displayed a cold callousness and obliviousness to the value of human life. He had demonstrated those qualities before: his criminal record was replete with evidence of his dangerousness and propensity to act violently toward others . . . .
>
> In addition, defendant displayed absolutely no remorse or contrition for his act.

*Brown*, 320 N.C. at 231-32, 358 S.E.2d at 34-35.

Defendant spent the day at issue in this case implementing a plan by interrogating suspects, patrolling the neighborhood and surrounding areas, and finally ambushing Edward Wilson and murdering him

with an illegal weapon. Furthermore, defendant's televised exhibition of the technique by which he murdered Wilson was a cavalier demonstration of his callousness and obliviousness to the value of human life. While the jury in this case did find a number of mitigating circumstances, we cannot say that the death penalty as imposed in this case is excessive. The case *sub judice* is therefore distinguishable from the seven cases in which this Court has found the death sentence to be disproportionate and entered a sentence of life imprisonment.

It is also proper for this Court to "compare this case with the cases in which we have found the death penalty to be proportionate." *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. Although we have repeatedly stated that we review all of the cases in the pool when engaging in this statutory duty, it bears repeating that "we will not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* It suffices to say at this time that we conclude the present case is more similar to certain cases in which we have found the sentence of death proportionate than to those in which we have found the death penalty to be disproportionate or those in which juries have consistently returned recommendations of life imprisonment. Accordingly, we conclude that the sentence of death recommended by the jury and ordered by the trial court in the present case is not disproportionate.

For the foregoing reasons, we hold that defendant received a fair trial, free from prejudicial error, and that the sentence of death entered in the present case must be and is left undisturbed.

NO ERROR.